## Bennett v. Commonwealth.

(Decided June 16, 1916.)

### Appeal from Graves Circuit Court.

1. Criminal Law—Review—When Evidence Sufficient to go to Jury.— In a prosecution for grand larceny, where the evidence conduced to prove that money was stolen; that defendant was the only person who had an opportunity to steal it; that he fled from the state after he was charged with the crime; and that he offered to pay $200.00 to prevent his prosecution; such evidence required submission of the case to the jury and will support its verdict of guilty.

2. Criminal Law—Evidence—Statement Not in Presence of Defendant.—It not appearing that a conversation between jail officials and the sheriff who went to take charge of defendant, to the effect that defendant had been using an assumed name, took place in the presence or hearing of defendant, or that he was close enough to or did hear or understand any statement to that effect, evidence of such conversation was not competent, and being prejudicial to defendant, will compel a reversal of the case on appeal.

3. Evidence—Contents of Letter—How Proved.—In the absence of a letter its contents cannot be proved by oral evidence, without

a showing of its loss or destruction, or that from some other sufficient cause the party offering to prove its contents is unable to produce it.

4. Criminal Law—Evidence—Contents of Letter—When Proof of Not Admissible.—Evidence as to the contents of a letter from a bank to the defendant in a criminal prosecution held not admissible, where it was not made to appear that defendant had ever received the letter or had it in his possession; had any business dealings with the bank; or that there was any such bank; or identification of the signature to the letter as that of an official of the bank.

5. Criminal Law—Evidence—Character of Defendant.—Where defendant in a criminal prosecution testified in his own behalf, the Commonwealth was properly allowed to introduce in rebuttal evidence showing his bad moral character and want of veracity.

6. Criminal Law—Record—Notation on by Trial Judge as to Evidence.—After the transcript of evidence has been approved by the trial judge and made a part of the record, it is official and conclusive as to the testimony given in the case; therefore, on appeal, a notation by the trial judge following the bill of evidence, as to evidence and rulings which in his recollection were not as given in the bill of evidence, will not be considered by the Appellate Court. If corrections are to be made he should correct the bill of evidence before approving and signing it.

STANFIELD & STANFIELD for appellant.

M. M. LOGAN, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, Bozzie Bennett, was tried and convicted of grand larceny under an indictment returned by the grand jury of Graves county charging him with that crime; the verdict of the jury fixed his punishment at confinement in the penitentiary not less than two years nor more than two years and one day. From the judgment entered upon that verdict he has appealed.

The facts furnished by the evidence in the record are substantially as follows: W. F. Bennett, an uncle of appellant, spent a Saturday night at the home of Tom Bennett, appellant's father, taking with him $429.00 in money. This money he had in a sack about four inches in length, which was carried in his hip pocket. Early in the evening, W. F. Bennett went to bed. Somewhat later the same evening, the appellant, Bozzie Bennett, got into bed with W. F. Bennett. The latter slept late the next morning, Sunday, but appellant got up before he did, without waking him. When W. F. Bennett got

out of bed on Sunday morning he discovered that the $429.00 which he had left in his hip pocket was gone. He found on the floor the sack which had contained it, and a velvet string with which the sack had been tied. W. F. Bennett, after discovering his loss, complained to appellant about it and the latter suggested that possibly the money could be found and that his uncle had lost money on previous occasions. W. F. Bennett went on Sunday morning from the home of his brother, Tom Bennett, to that of his brother, James Bennett, and informed the latter of the loss of his money. James Bennett advised the procurement of a warrant for the arrest of appellant, and acting upon this advice, W. F. Bennett caused a warrant to be issued on Monday, the day following. James Bennett, being of opinion that appellant had stolen the money and that he might be able to recover it without the execution of the warrant, took it with him and went to see appellant, whom he met in the road with one, Joe Puckett. He called appellant to one side and informed him that a warrant had been issued for his arrest, charging him with the theft of the money of W. F. Bennett. Thereupon appellant suggested that he might be able to find the money; that W. F. Bennett had probably left it under his pillow or somewhere about the house; and that if he (appellant) were given a chance, he would make a search and see whether he could find the money for his uncle. Being, as he testified, satisfied that appellant had the money and would return it to prevent his arrest, James Bennett permitted him to go in search of it. James Bennett then went to Austin Springs, but on returning found that appellant, instead of carrying out his avowed purpose to search for the money, immediately went to Tennessee and a day or two later from that state to California, where he spent some time, and thereafter returned to Memphis, Tennessee, where his arrest was effected, at the instance of W. F. Bennett. W. B. Sullivan, the sheriff of Graves county, thereupon went to Memphis, took charge of appellant and returned with him to Graves county, Kentucky, for trial.

It was also shown that appellant, but a day or two before the theft of W. F. Bennett's money, attempted to borrow some money through a friend, to whom he said that he lacked twenty-five dollars of having enough money to make a trip to California, which he then con-

templated taking. He also said to his uncle, W. F. Bennett, after the latter had charged him with the theft of the money, that he would compromise the matter by paying him $200.00 if the prosecution against him was stopped. In addition to the foregoing facts, it was shown by the testimony of one, Hye, a rural route postman, that shortly after the departure of appellant from this state, he (Hye), read a letter to appellant from the Clovis National Bank, of Clovis, New Mexico, in which it was stated that appellant had, on May fifth, deposited $270.00 in that bank, which on May tenth he drew out. This letter was read by Hye because it was shown to him by Tom Bennett, the father of appellant, with the request that he read it as appellant's wife did not understand the letter, and wished it explained to her. W. B. Sullivan, sheriff of Graves county, testified that when he went to Memphis to take appellant in charge he was told by persons in charge of the jail where he was confined that he had there gone under the name of Brown.

Appellant, testifying on his own behalf, denied that he took his uncle's money or knew anything about its loss; and stated that his uncle had on a previous occasion lost some money which was found by another person and returned to him. He in part admitted the conversation with his uncle, James Bennett, and that he told the latter that he would help to search for the lost money, but denied that he left for California to avoid prosecution for stealing the money. He also admitted that he told his uncle, W. F. Bennett, that rather than be brought into court and prosecuted for stealing the money, he would pay him $200.00 as it would cost him that much to pay his lawyer's fees and other expenses resulting from a prosecution; but that W. F. Bennett then told him that he did not believe he (appellant) had gotten his money. Tom Bennett, the father of appellant, being introduced in his behalf, testified that his brother, W. F. Bennett, often spent the night at his house, and he had on numerous occasions slept with appellant while there; that he saw no money in the possession of his brother on the night the latter claimed $429.00 was stolen from him. Several witnesses were introduced in rebuttal, by whom it was shown that appellant's reputation for morality and veracity was bad.

It is manifest from the evidence introduced for the commonwealth that appellant's complaint · of the re-

fusal by the trial court of the peremptory instruction directing his acquittal, asked by him when the commonwealth concluded its evidence, is without merit. As this evidence conduced to prove that the $429.00 was stolen from W. F. Bennett; that appellant was shown to have been the only person who had an opportunity to steal it; and together with his conduct attending and following the loss of the money, his offer to pay $200.00 to prevent his prosecution and his flight from the state after he was charged with the crime, furnished considerable circumstantial proof of his guilt, it compelled the submission of the case to the jury. And while his denial of guilt and explanation of his conduct connected with and following W. F. Bennett's loss of the money and of his going to California supported his claim of innocence, it was the province of the jury to ascertain and declare the truth of the matter, and there is no ground for saying that the verdict finding him guilty is unsupported by evidence, or that it is flagrantly against the evidence.

We, however, find in the record two errors assigned by appellant, each of which was so prejudicial to his substantial rights as to compel the reversal of the judgment of conviction. The first of these errors was the admission of the testimony of Sullivan, the sheriff of Graves county, giving the conversation he had with the jail officials in Memphis when he obtained the custody of appellant for the purpose of bringing him to Graves county, this state, to be tried under the indictment charging him with the crime of grand larceny, of which he was convicted in the instant case. The second error consisted in the admission of the testimony of the rural route postman, Hye, with respect to the contents of the letter, purporting to have been written by the Clovis National Bank, of Clovis, New Mexico, to appellant, which the witness claimed to have read.

The transcript of the evidence, made by the court's official reporter from the stenographic notes taken by her on the trial, shows the conversation between Sullivan and the jail officials at Memphis to have been as follows:

"Well, I went there and called for Bozzie Bennett, and they says, we will take you back here to the cell and show you a man who says his name was Brown, says he told us his name was Brown. So they carried me back there and I called Bozzie out and they told me

that he was the one that had been going under the name of Brown.''

It will be observed that this conversation related by Sullivan was not certainly shown to have taken place in the presence or hearing of appellant, or that he was close enough to hear or did hear or understand the statement of any official of the Memphis jail to the effect that he (appellant) had said his name was Brown, or that he had gone in Memphis or after his arrest there, under the name of Brown. In the very recent case of Pace v. Commonwealth, reported in 170 Ky. page 560, we had under consideration the question of the competency of this character of evidence. In the opinion it is said:

''Two things must concur to make such testimony competent as evidence. It must have been made in appellant's presence and hearing and at a time and under such circumstances as would naturally call for a response from him. Manifestly these essential elements are both wanting in this case. In Newman v. Commonwealth, 28 R. 81, it was held in a prosecution for murder that a statement made by a witness to the defendant to which the latter made no answer was not admissible. In Eaton v. Commonwealth, 122 Ky. 7, it was held that admissions by acquiescence as to what someone had said in the presence of the defendant on trial for a crime are not admissible, unless it plainly appears that the remark was plainly understood by the defendant and was uttered under such circumstances as would afford him an opportunity to speak, and would naturally call for some reply. In Hayden v. Commonwealth, 140 Ky. 634, it was held that on a separate trial of one of several persons charged with crime, evidence of statements by the others, while in custody and in the presence of the accused, to which he made no response, was inadmissible to show his guilt of the crime. The following additional authorities fully adhere to the rule announced in the case, supra: Lyon v. Commonwealth, 29 R. 1020; Sprouse v. Commonwealth, 132 Ky. 269; Hall v. Commonwealth, 29 R. 485; Wilson v. Commonwealth, 121 S. W. 430.''

Obviously, the admission of the testimony of Sullivan was very prejudicial to appellant, for the assumption by him of the name of Brown, together with his sudden and secret departure from this state when informed that a warrant charging him with the theft of his uncle's

money had been issued, furnished circumstantial evidence strongly conducing to prove his guilt of the crime charged, and that his motive for leaving the state and concealing his identity, was to escape prosecution and the conseqeunt danger of conviction, that would result from his arrest.

It appears from the record that after the bill of exceptions, of which the evidence is a part, was approved, signed and made a part of the record, by the judge of the circuit court, he wrote, following the transcript of evidence, the following statement with respect to the testimony of Sullivan:

"The court's recollection of this testimony is that the witness, Sullivan, testified that he went back in the jail at Memphis, Tennessee, and that the officer called the defendant out of a cell and the witness, Sullivan, said, 'Hello, Bozzie,' and then the officer said, 'I thought you told us your name was Brown,' and that Bennett said, 'I did tell you that, but this man knows me,' and that the court thereupon instructed the jury orally that this evidence could only be taken for the purpose of contradicting Bennett, if it did contradict him, and not as substantive testimony."

It will be observed that the above written statement made by the judge of the circuit court contradicts and is wholly at variance with that of Sullivan contained in the bill of evidence, which was made out by the official stenographer of the court from the stenographic notes of the witness's testimony, taken down at the time it was given. Moreover, if, as stated by the judge, the jury were orally admonished that the testimony of Sullivan could only be considered by them for the purpose of contradicting Bennett and that it was not substantive testimony, he erred in giving such admonition, for the testimony was of a substantive character, as it circumstantially tended to establish appellant's guilt. If the testimony of Sullivan was as set forth in the written statement of the judge, the stenographer's transcript thereof should have been corrected by him before he approved and signed it. It will be further observed that he does not say in the statement made by him that the stenographer's transcript of Sullivan's testimony is incorrect, but that his recollection of it differs from that shown by the record he had previously certified to be correct. Be this as it may, we cannot consider the state-

ment of the trial court as to his recollection of the testimony, against the officially certified transcript thereof found in the bill of exceptions. This question was before us in Commonwealth v. Patterson, 10 R. 167, 8 S. W. 694 and in considering it we said:

"Following the bill of exceptions and the official signature of the presiding judge is a written statement signed by the judge, to the effect that there was no evidence before the jury showing that the appellant committed the crime and that for that reason he gave a peremptory instruction. The bill of exceptions shows that the judge approved it and signed it. If the bill of exceptions correctly set forth the evidence, it was the judge's duty to sign it. If it did not correctly set forth the evidence, it was the duty of the court to correct it, so as to make it conform to the truth and then sign it. This he did, and having done so, the bill of exceptions became an official paper, and the only official paper that we consider. His subsequent written statement was unauthorized and unofficial. Therefore we cannot consider any statement made in it."

The error in admitting the testimony of the rural route carrier, Hye, as to the contents of the letter mentioned by him is patent. It was not made to appear from the testimony of Hye or any other evidence in the record that appellant had ever had any business dealings with the Clovis National Bank; that the letter in question was ever received by him or in his possession; or that there is any such bank as the Clovis National Bank, of Clovis, New Mexico. Nor was the signature to the letter identified as that of an official of the bank.

It should further be remarked that the best evidence of the contents of a letter is furnished by the letter itself. In the absence of the letter its contents cannot be proved by the oral statements of a witness or witnesses, without a showing of its loss or destruction, or that from some other sufficient cause the party offering to prove its contents had been unable to produce it that it might be read on the trial. No such showing was made in this case, consequently on this ground, if no other existed, proof of the contents of the letter was inadmissible. Frasure v. Commonwealth, 169 Ky. 620.

Appellant makes the further complaint that he was also prejudiced in his substantial rights by the evidence as to his bad moral character, which the trial court per-

mitted the commonwealth to introduce in rebuttal. This contention cannot prevail. Where the defendant in a criminal prosecution does not testify as a witness in the case, as allowed by section 223, Criminal Code, evidence attacking his veracity is not admissible; nor will evidence attacking his moral character be admissible when he has not testified as a witness, unless he has first introduced other witnesses to show his moral character to be good. Hansford v. Commonwealth, 170 Kentucky, 700. Where, however, the defendant testifies as a witness in his own behalf, he is then to be treated as any other witness and his general moral character, as well as his character for truth and veracity, may be put in issue, i. e. attacked, by the commonwealth; although particular acts, whether good or bad, cannot be proved. 2 Roberson's Ky. Crim. Law & Procedure, section 972; Trusty v. Commonwealth, 19 R. 706; McDonald v. Commonwealth, 80 Ky. 10; Lockard v. Commonwealth, 87 Ky. 201; Pace v. Commonwealth, 89 Ky. 204. As in this case appellant testified in his own behalf, the commonwealth was properly allowed to introduce in rebuttal for the sole purpose of impeaching and discrediting him as a witness, the evidence showing his bad moral character and want of veracity.

Consideration of the grounds, other than those already disposed of, relied on by appellant for a reversal is deemed unnecessary, as they are not of such character as to require a reversal, and opportunity for their recurrence on another trial will not be likely to result. The instructions given on the trial appear to be substantially correct.

For the reasons indicated the judgment is reversed and cause remanded for a new trial in conformity to the opinion.