## Ford v. Commonwealth.

(Decided May 21, 1935.)

WILL M. GRAHAM and C. C. CRABTREE for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

From a judgment sentencing him to the penitentiary for three years and one day, for the crime of voluntary manslaughter, Claud Ford appeals, insisting he is entitled to a reversal because of the absence of evidence showing the venue; proceedings were had in his and his counsel's absence; and the verdict of the jury is flagrantly against the evidence.

It is true the evidence fails to show in express terms that the offense was committed in Monroe county, Ky.

"The rule is that it is not necessary to show by direct evidence that the crime occurred in the county, but that this fact may be established by proof of facts and circumstances from which it may be inferred. Fletcher v. Commonwealth, 210 Ky. 71, 275 S. W. 22; Stubblefield v. Commonwealth, 197 Ky. 218, 246 S. W. 444. While the jury is not presumed to know the location of particular homes, Wilkey v. Commonwealth, 104 Ky. 325, 47 S. W. 219, 20 Ky. Law Rep. 578; Warman v. Commonwealth, 193 Ky. 701, 237 S. W. 378, it is presumed to have some knowledge of local geography, such as the location of towns, precincts, creeks, and the like, Commonwealth v. Patterson, 8 S. W. 694, 10 Ky. Law

Rep. 167; Hays v. Commonwealth, 14 S. W. 833, 12 Ky. Law Rep. 611. Following this rule, evidence has been held sufficient to take the case to the jury, where it showed that the offense occurred at 'The "Old Tub Fowlery Distillery," ' Kee v. Commonwealth, 175 Ky. 51, 193 S. W. 645, or 'at or near the "Greenbrier Spring," ' Kennedy v. Commonwealth, 100 S. W. 242, 30 Ky. Law Rep. 1063, or 'at the "mouth of Buckhorn," and at "Jones' and Field's storehouses," ' Combs v. Commonwealth, 25 S. W. 592, 593, 15 Ky. Law Rep. 659.'' See Nelson v. Commonwealth, 232 Ky. 568, 24 S. W. (2d) 276, 277.

This excerpt is sufficient to show that this court has continuously held that "slight evidence will be sufficient to sustain the venue and slight circumstances from which the jury might infer the place where the crime was committed are sufficient." And it is only where there is neither direct nor circumstantial evidence of venue that we will reverse a judgment because of the failure of proof, establishing it. Warman v. Commonwealth, 193 Ky. 701, 237 S. W. 378; Wilkey v. Commonwealth, 104 Ky. 325, 47 S. W. 219, 20 Ky. Law Rep. 578; Justice v. Commonwealth, 220 Ky. 209, 294 S. W. 1046. When the evidence in this case, showing venue, is measured to these principles, it is apparent it is adequately established.

It shows that the accused and his co-defendants were at the "Red Stable," Tompkinsville, Ky., where a number of them drank whisky out of a pint bottle; one of them had a quart bottle containing "a chaser." From this point they passed the office of Dr. Duncan going to a bridge at a creek. From this point to the place where Sam Hammer received the fatal blow which ultimately caused his death, the parties traveled on foot. At and during the time they were making this short distance, Clay Ford and Sam Hammer engaged in three distinct fist fights. At the conclusion of the last one, it was discovered Clay had lost his cap, when some one of those present endeavored to find it for him. While Clay Ford and Hammer engaged in their last fight, Judge Murphy, from his front porch, heard the noise thereby created. Within a moment thereafter, he heard a fight between five or six individuals, between his home and that of Andrew Ford. The time in which these parties traveled the distance from the "Red Stable"

to the place where Hammer received a mortal wound, together with the attending facts and circumstances, sufficiently establish the venue. Under the instructions of the court, the jury was required to believe that the crime was committed in Monroe county, before it could find Claud Ford guilty. Under the proven facts, it was justified in finding that the offense was committed in Monroe county. Pickerel v. Commonwealth, 30 S. W. 617, 17 Ky. Law Rep. 120; Combs v. Commonwealth, 25 S. W. 592, 15 Ky. Law Rep. 659; Stubblefield v. Commonwealth, 197 Ky. 218, 246 S. W. 444; Kennedy v. Commonwealth, 100 S. W. 242, 30 Ky. Law Rep. 1063; Fletcher v. Commonwealth, 210 Ky. 71, 275 S. W. 22; Nelson v. Commonwealth, supra.

After the case was submitted to the jury, it appeared in open court at a time the accused and his counsel were absent, and inquired of the court "if a punishment of two years and one day was inflicted, would the defendant be compelled to serve the full time fixed in the verdict." The bill of exceptions discloses the court made no response to its inquiry. Later, it returned into court a verdict fixing the punishment at three years and one day in the penitentiary.

Ford argues that it is thus shown that section 249 of the Criminal Code of Practice was violated, and such violation entitles him to a reversal. Section 249 reads:

"After the jury retires for deliberation, if there be a disagreement between them as to any part of the evidence, or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the counsel of the parties."

The argument that the jury merely propounding the question to the court constitutes a violation of section 249, is extremely technical. It is true, if the court had responded to the inquiry before doing so, it would plainly have been his duty to comply with this Code provision, and, if the defendant and his counsel were absent, have them present. Puckett v. Commonwealth, 200 Ky. 509, 255 S. W. 125, 34 A. L. R. 96. Since the record discloses that the court in no way disregarded

this Code provision, the accused may not, in the circumstances, invoke it as a ground of reversal.

A consideration of the argument that the verdict of the jury is flagrantly against the evidence requires a review of its salient points.

The accused and his codefendants, except Clarence Thompson, completely exonerate him of the charge of which he was convicted. Their testimony shows that Clarence Thompson, after the last fight of Clay Ford and Sam Hammer, accompanied Sam Hammer in the direction of the home of Andrew Ford, and while they were alone Clarence Thompson inflicted upon Hammer's head the wound which caused his death. They agree up to this point that nothing whatsoever had occurred between Clarence Thompson and Sam Hammer, either indicative, or suggestive, of ill feeling or trouble between them. According to their testimony, Clarence Thompson struck Sam Hammer on the head with an empty bottle, and thus produced the mortal wound. They claim that he then and there admitted the act, and later did so in their presence and the presence of others. Clarence Thompson not only controverts their testimony, but claims that Claud Ford inflicted upon Hammer's head the mortal wound, and immediately stated in his presence and in the presence of all parties present: "I won't give you (Sam Hammer) any chance to shoot me any more." Claud Ford admitted that a year or two prior to the infliction of Hammer's injuries, Hammer had shot at him, of which he had been convicted and served time in the penitentiary. Clarence Thompson admitted that after Hammer was wounded, and before his death, he, Claud Ford, Clay Ford, and the others who were present at the time Hammer was wounded, agreed that he (Clarence Thompson) would confess that he had wounded Hammer and assume all responsibility therefor, and that those present at the time he was wounded would stand by him in his trial; but that if he refused to make this arrangement they would "railroad him to the penitentiary."

It should be noted that according to the testimony of Claud Ford, Clay Ford, Otto Ford, and Fred Thompson, Clarence Thompson only struck Hammer on the head with a quart bottle; that he inflicted no other injury to, or on, his person. In contradiction of this, the

evidence of the commonwealth shows that Hammer sustained a serious injury on the head; "had been choked"; "larynx injured until he was unable to talk for nearly one week"; "his left rib was pushed in"; "his right one pushed up"; and "there was an injury in his groin about one inch long." On Friday after he sustained these injuries, Hammer's throat sufficiently recovered to enable him to begin to talk. He stated more than once in the presence of a number of witnesses, "I am going to die"; and when asked who had killed him, he said that Clay and Claud Ford did it and Clarence and Fred Thompson "were there"; "all of them killed me." As a whole, the evidence was and is abundantly sufficient to authorize the submission of the case to the jury.

When determining the sufficiency of the evidence to authorize the submission of a case to a jury, the accepted rule is, if there is any evidence, however slight, tending to show the accused's guilt, the case should go to the jury. Simmons v. Commonwealth, 207 Ky. 570, 269 S. W. 732; Bullock v. Commonwealth, 249 Ky. 1, 60 S. W. (2d) 108, 111, 94 A. L. R. 407.

In the latter case, it is written:

"The question of his guilt was one peculiarly within the province of the jury. We are forbidden from reviewing the evidence to determine if it justifies a conviction (Cornelius v. Commonwealth, 54 Ky. [15 B. Mon.] 539); nor is it our province to pass upon the facts other than determine whether there is any evidence to support the verdict (Cornett v. Commonwealth, 156 Ky. 795, 162 S. W. 112), unless the verdict is manifestly wrong or palpably against the weight of the evidence (Miller v. Commonwealth, 231 Ky. 527, 21 S. W. (2d) 840; Ritchie v. Commonwealth, 243 Ky. 479, 48 S. W. (2d) 1072), and, if there is any evidence affording grounds on which the jury's verdict might be sustained, it is considered neither wrong nor palpably against the weight of the evidence (Newsome v. Commonwealth, 240 Ky. 333, 42 S. W. (2d) 306; Barton v. Commonwealth, 240 Ky. 786, 43 S. W. (2d) 55; Tussey v. Commonwealth, 241 Ky. 91, 43 S. W. (2d) 351)."

Our resume of the evidence is sufficient to show a direct, positive conflict of the verbal testimony of the

witnesses of Ford and the injuries upon Hammer's body, as well as his dying declaration and the testimony of Clarence Thompson. When the whole of the evidence is tested by the principles reiterated, it is very plain it sustains the jury's verdict. The record showing no error prejudicial to his substantial rights, or that he has been deprived of a fair and impartial trial, the judgment of conviction is affirmed.