# Lett v. Commonwealth.

Nov. 1, 1940.

Flem D. Sampson, Judge.

**268**

Bird & Bird for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellant, alias Lee Thomas, Hoyt Butler, alias Jeffrey, Thomas Ross and Rogers Tate, were jointly indicted December 4, 1939, for the murder of William D. Tittle on September 21, 1939. All four were arraigned on December 5, and trials set for the 12th of the same month; being without counsel a member of the local bar was appointed to defend. Later severance was granted, the commonwealth electing to try Lett.

Motion for a change of venue and continuance were overruled. A jury was empanelled, and trial resulted in a verdict of guilty, and death penalty. Counsel filed motion for a new trial, and in support set up seven or more grounds. This was overruled and appeal followed; the technical errors here charged are:

(1) Error in refusing appellant's motion for a continuance.

(2) In admitting evidence of a confession, because obtained in violation of the anti-sweating act, and the State and Federal Constitutions.

(3) In permitting the commonwealth to read in evidence the statement of a codefendant, made after the alleged crime was committed, and not adopted by appellant as his own.

(4) In failing to submit an instruction as to the "anti-sweating" proof, under applicable law.

(5) In admitting evidence of other offenses.

(6) In permitting the jury to rehear testimony in

the absence of counsel for appellant and without notice to him.

Tittle, a white man, on relief lived in Cincinnati. A week prior to his death he had gone to visit his father in Knoxville, Tenn. He was out of funds, and later was endeavoring to make the return trip on a north-bound freight train. Lunnie Cox, living in Tennessee, had been visiting his home and was "hoboing" north to get to his C. C. Camp near Brownstown, Indiana.

Appellant Lett, sometimes calling himself Lee Thomas, and Butler, sometimes calling himself J. Jeffrey, lived in Pittsburgh, Pa. About two weeks prior to the homicide they had gone to Knoxville to visit Butler's relatives. They had money for the return trip but during their visit Butler's aunt died in Cincinnati, and they sent all their money to relatives to transport the body to Tennessee, so they decided to "hobo" to Cincinnati. They went to a suburb of Chattanooga, where with Ross and Tate, two other colored men, they got into a box car, and when the train stopped at Dayton, Tenn., all four were arrested, placed in jail for "hoboing" and there remained for eight days.

Released on September 21, they walked to a point north of Dayton and all save Ross got into a box car; the train proceeded to Oakdale, where Tittle and Cox got in the car. Ross had selected a car further front, but later came to the box car with a young white boy, referred to in the testimony as the "kid." Tittle had a bundle with some clothing and perhaps some food; Cox had a brown traveling bag. Ross remarked that he was going to get one bag, evidently referring to the one carried by Cox.

Cox, who was thrown from the freight car about the time Tittle was thrown off, was the only eyewitness who testified, save appellant and his companion Butler. Cox had just been released from the hospital at the time of trial. After detailing the facts, substantially as given above, he said the train left Oakdale about 5:00 p. m., and proceeded to Lansing, when Ross and the kid got into the car. After the train left Lansing he, Tittle and the boy were sitting on the floor on the east side of the middle of the car as the train went north; the door was partly open. The colored men were in the south end of the car, about 10 feet distant, and in which

positions they all rode for some time, apparently not in disagreement. At some point the engineer jerked the slack out of his train; Tittle was thrown off his balance and started to get up. There was another jerk which caused Tittle to move suddenly toward the south end of the car.

Witness says the next thing he felt an arm under his chin, and some one said "Don't move," and tightened his grip on his head; Cox was struck several times on the head with an iron pipe, shown in evidence. He caught hold of the assailant's leg, and he said "turn loose my leg," and witness, with effort, shoved him back to the side of the car; he heard a shuffling of feet, and some one "halloed for assistance; the two who were handling me, the one or the other." The other two came up, grabbed witness and "swung" him two or three times; one said, "Let go," and he was thrown from the car. The blow on the head had filled his eyes with blood, and he could not see whether they had thrown the "other man" from the car or not, but he believed they had, and physical facts proved this to be true

Cox suffered the breaking of both arms and legs, and was otherwise bruised and injured. Notwithstanding his condition, with great effort, he crawled to a section house, and a Mr. Thompson called Somerset, asking to have the train stopped and the parties arrested. Cox was taken to a hospital in Somerset, and later on the same evening positively identified the four colored men who had been in the car.

A railroad police officer in Somerset received a report of the occurrence, and relayed the information to another officer at Danville. The two started investigation at once, and one of them met the train at Danville and made the arrests. Investigation led officers to the place where it was clearly indicated that Cox had been thrown from the car. Search was made for Tittle, and his body was found about one-half mile south from the point where Cox had landed. About 40 feet north of Tittle's body his pocketbook was found, with identification memorandum; other articles were found, but the traveling bags and other articles, were found in the car when arrests were made. The zipper bag was among these.

Tittle's arms and legs were both severed; the top of his head missing, and from description it would appear that he landed on another track and was mangled by a passing train. The evidence shows that the boy was also thrown from the train, though there was found no trace of him.

Evidence tended to show that after the arrest the accused had splotches of blood on his shoes and trousers. Butler was found with Cox' cigarette lighter, and tie clasp belonging to him was found in the zipper bag taken by officers.

Defendant in testifying, as did Butler, endeavored to lay the crime on Ross and Tate, referred to frequently as the "southern negroes." He said Ross had indicated that he was going to get the zipper bag carried by Cox. He then details the occurrences much in the same manner as above, but insisting, as did Butler, that Ross and Tate were the sole aggressive actors, and that neither he nor Butler were more than onlookers.

We have not gone into minute details in stating facts and circumstances, which show beyond doubt that an inexcusable, vicious murder was committed, because due to an error, technical though it be, it was such as to compel reversal of the judgment.

No. 1, refusal to grant continuance, need not be discussed, since it may be concluded that such grounds as were there advanced, could not be presented on a succeeding trial. No. 2 related to the introduction of a written confession, made by appellant while in custody of officers, on the night of the homicide. The contention is that it was obtained by repeated questioning, threats and intimidation, so that under our anti-sweating act (Kentucky Statutes, Section 1649b-1) its introduction constituted prejudicial error.

The officers say that while questions were asked, they were not numerous, nor such to indicate duress; no threats or promises were made, and appellant was advised that his statement might be used against him. Indeed, as we read the testimony of appellant, though denying that he made some attributed statements, he does not contradict the statements of the officers as to circumstances under which the confession was made. His testimony shows that the statement was not im-

pelled by influence, promise, threat or coercion. We, therefore, hold that it was properly admitted. See Powell v. Com., 276 Ky. 234, 123 S. W. (2d) 279, and cases dealing with the subject, 6 Kentucky Digest, Criminal Law, Key Number System 522(1).

Contention No. 3 challenges the propriety of introduction as substantive evidence, the confession of Butler, made at the same time and place, and under the same circumstances as was appellant's confession. This presents a closer question than the one last discussed, and counsel insists that this was highly prejudicial under our rulings in Merriwether v. Com., 118 Ky. 870, 82 S. W. 592, 26 Ky. Law Rep. 793, 4 Ann. Cas. 1039, and Eaton v. Com., 122 Ky. 7, 90 S. W. 972, 28 Ky. Law Rep. 906, 12 Ann. Cas. 874.

These cases were referred to and distinguished in Barton v. Com., 240 Ky. 786, 43 S. W. (2d) 55, and in the later case of Griffith v. Com., 250 Ky. 506, 63 S. W. (2d) 594, in which dealing with admissions, or accusatory statements made by third parties, we laid down the general rule to be that such admissions or accusations are admissible, if made in the presence of the accused, when he had opportunity or was reasonably called upon to deny, unless circumstances were such that he was not free to contradict or counteract them, because of fear, duress or other restraining reasons.

The propriety or impropriety of the admission of such evidence is fraught with confusion, and there is wide divergence of opinion in courts as to its effects and admissibility, as will be seen from notes to State v. Portee, 80 A. L. R. 1129. However, when we refer to Hayden v. Com., 140 Ky. 634, 131 S. W. 521, 522, we find that we said:

"* * * in a separate trial of one of several persons charged with murder, evidence of statements made by the others while in custody, and in the presence of the defendant, to which he made no response, are not admissible as to the defendant's guilt." Citing the Merriwether case, supra.

This opinion has been quoted favorably in Pace v. Com., 170 Ky. 560, 186 S. W. 142; Bennett v. Com., 171 Ky. 63, 186 S. W. 933; Sprouse v. Com., 132 Ky. 269, 116 S. W. 344, and Wilson v. Com., Ky., 121 S. W. 430,

under circumstances slightly differing from those here shown, where the statements of the two accused were simultaneous, and substantially identical in language and effect. If it were not for the fact that the statements were thus made, we perhaps would hold reversible error, but under the circumstances, holding the admission to be nothing more than harmless error, we yet see little reason for its introduction. We, therefore, suggest that the cases above cited should advise the commonwealth's attorney that it would be the better practice not to offer the Butler statement; certainly not as substantive evidence.

The next error relates to the court's permitting evidence of former difficulties, and minor offenses on the part of appellant. On cross examination he was compelled to answer that he had theretofore been in custody in different cities in Ohio. His explanation was such that prejudice could hardly have resulted, but as we are to take up this question in the companion case, Butler v. Com., 284 Ky. 276, we refer the commonwealth's attorney thereto, and he may determine if he desires to chance the introduction of that character of testimony on another trial. We note that there was no objection in this case to the line of questioning.

(4) The court did not err in failing to give the "anti-sweating" instruction. In Bennett v. Com., 226 Ky. 529, 11 S. W. (2d) 437, we found error in failure to submit to the jury the question as to whether or not the alleged confession had been made voluntarily, or under circumstances which would make the same inadmissible, likewise in Crawford v. Com., 264 Ky. 498, 96 S. W. (2d) 12. The rule is clearly laid down in Com. v. McIntosh, 257 Ky. 465, 78 S. W. (2d) 320, where similar cases are collected. We are of the opinion there was here not such conflicting evidence as would require the court to submit the question to the jury. In cases where doubt exists, it would be the better practice to submit the question.

(6) The record shows that the case was closed and submitted to the jury in the afternoon of December 13. When court convened on the following morning the judge said to the jury: "It has been made known to me that you desire to have some evidence read by the official reporter," and by reporter: "What particular

evidence do you wish me to read?'' A member of the jury answered: ''We would like to hear that part of Lunnie Cox' evidence where he relates where he was attacked.''

The stenographer, in the absence of appellant's counsel, then read from portions of the Cox evidence, wherein witness had related:

''The engineer jerked the slack out of the train, and Mr. Tittle was squatted, and it threw him off balance and he caught on his left, and about the time he got straight the engineer jerked the slack again and that run him in the direction of the south end.''

Further:

''The arm was under my chin, and he says 'don't move.'

''Q. Do you know who it was said that? A. That gentleman over there, (indicating Lett).''

The stenographer then read to the jury Cox' evidence relating to the throwing him off the train, and one member of the jury said: ''That is all.'' Here the reading stopped. This was done without notice to appellant's counsel.

The complaint here is that the reporter should have read—and if present counsel would have so insisted—all of Cox' testimony, or particularly that portion wherein he said he had formerly told the commonwealth's attorney that he believed he knew who had assaulted him, and then on cross-examination said that he did not know which one had. Appellant contends that the procedure was contrary to constitutional safeguards, and the provision of Section 249, Criminal Code of Practice, which reads:

''After the jury retires for deliberation, if there be a disagreement between them as to any part of the evidence, * * * they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the counsel of the parties.''

It has been recognized since time immemorial, under

the common law, the federal and our Constitution, that when one is charged with a felony the trial must be had in the presence of the accused, and that the accused has the right to be heard by himself and counsel. The Code provision makes it quite plain that if there be disagreement as to evidence—which must have existed here, else no reason for the request—any elucidation must not be had without notice to counsel. The reason is obvious, and particularly applicable here, where the witness had given contradictory testimony. It is beyond our power to make a rational guess as to the effect of the failure to have re-read the contradictory evidence.

In Kokas v. Com., 194 Ky. 44, 237 S. W. 1090, 1091, after submission the court allowed the stenographer to go, at the request of the jury, to the jury room and read disconnected parts of evidence from his note book, only such as were asked to be read. This case was reversed because the trial in part was had in the absence of the accused (Criminal Code of Practice, Section 183), apparently without reference to Criminal Code of Practice, Section 249, but we held error since "the right to be heard by himself and counsel * * * embraces the right to be present himself, and to have a reasonable opportunity to have his counsel present also, at every step in the progress of the trial; and to deprive him of this right is a violation of that provision of the fundamental law." We sufficiently manifested in the Kokas case, and others cited therein, that certain apparently guaranteed rights might be and are sometimes waived, but which rule we need not discuss since we are convinced that the rule would not apply here.

In Puckett v. Com., 200 Ky. 509, 255 S. W. 125, 127, 34 A. L. R. 96, we reversed because the judge entered the jury room and gave further instructions to the jury in the absence of the accused or counsel. We referred to Section 249 of the Criminal Code of Practice, and quoting it, held that "counsel" referred to attorney for the commonwealth and counsel for defendant, saying that while the section did not disclose the presence of the defendant to be necessary, the right to "have his counsel present, during the trial and at all stages thereof, is one guaranteed by the Constitution and declared by Section 183, Criminal Code; therefore its reiteration by Section 249 was unnecessary."

In this case it could hardly be contended that appel-

lant could have waived notice to his counsel, since it is difficult to believe that he would know of the effect of the failure to read all or other portions of the testimony. These above cited cases may be readily distinguished from Grubbs v. Com., 240 Ky. 473, 42 S. W. (2d) 702; Ford v. Com., 259 Ky. 492, 82 S. W. (2d) 785, in one of which counsel agreed to a reading of the notes, and in the other the judge refused the request of the jury.

Counsel for accused does not contend that the verdict of the jury was contrary to or against the evidence, and we have no doubt but under the facts adduced, the jury was justified in inflicting the death penalty; under the facts as detailed the accused has committed, or assisted in the commission of, an inexcusable crime; one as horrible and reprehensible as any we have had occasion to consider, and it is regrettable that the commonwealth should be put to the expense of another trial on account of a technical error or errors, but in view of the rulings in the cases cited, particularly on the last discussed point, we find our duty clear, hence must and do reverse the judgment for a new trial consistent with this opinion.

Judgment reversed.