# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28 (4) (c), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS AUTHORITY IN ANY OTHER CASE IN ANY COURT OF THIS STATE.

# Supreme Court of Kentucky

## 2005-SC-0279-MR and 2005-SC-0806-TG

ROBERT KEITH WELCH          APPELLANT

V.

APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE GARY D. PAYNE, JUDGE
2003-CR-00398-002

COMMONWEALTH OF KENTUCKY          APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

This appeal is from a judgment based on a jury trial which convicted Welch of first degree manslaughter, first degree robbery and tampering with physical evidence. He was sentenced to a total of 20 years in prison.

The questions presented are was it error to provide an initial aggressor qualification instruction; did the trial judge commit error when answering jury questions without the presence of counsel, Welch and not in open court; was prior bad act evidence improperly admitted; was it error to allow evidence about a particular song and was it used to improperly inflame the jury; and, finally, was it improper to deny the request for a new trial without an evidentiary hearing.

Welch and another man were friends. That friendship included the two of them being involved in producing music together as well as dealing drugs and possibly other

illegal activities. They needed money to be able to record their music in a professional studio and hatched a plan that would get them enough money to record their music. They contacted another acquaintance and even though they had just enough money to buy a few pounds of marijuana they indicated they wanted to buy ten pounds. The plan was to then re-sell the marijuana at a significant profit. They thought they could double their money. At some point, that plan was modified and instead became a plan to rob the drug dealer, keeping the marijuana and the money for themselves.

There are various versions of what happened but eventually the drug dealer was shot three times and killed. One version of the testimony had the drug dealer attempting to rob Welch and his friend at gunpoint. The defense attempted to show that Welch shot the drug dealer in order to protect himself or his friend. Another version had Welch robbing the drug dealer and shooting him when he resisted.

Welch's friend and another person who provided the initial contact to the drug dealer each entered pleas of guilty and received ten year sentences on reduced charges in exchange for their testimony against Welch. He was convicted of first degree manslaughter, first degree robbery and tampering with physical evidence. Sentencing resulted in a total of 20 years to serve in the state penitentiary. This appeal followed.

## I. Initial Aggressor Qualification Jury Instructions

Welch argues that the evidence at trial indicated that the victim initiated the physical confrontation that led to his death. He asserts that the theory by the prosecutor that Welch met the victim to obtain marijuana by theft with a loaded weapon does not establish that Welch was the first to use physical force offensively. He also

claims that the trial judge erred by giving the jury initial aggressor qualifications. We do not agree.

This issue was preserved for review by objection that was overruled by the trial judge. Welch's defense was built around defense of another or self defense. Instructions were provided by the trial judge that required the jury to consider whether Welch was precluded from those defenses because he was the initial aggressor. The defenses and possible preclusion applied to the range of charges including first degree manslaughter, second degree manslaughter and reckless homicide that all revolved around the killing of the drug dealer.

The trial judge properly considered the complete circumstances involved in the incident. See Stepp v. Commonwealth, 608 S.W.2d 371 (Ky. 1980). The testimony from the various witnesses directly involved with the incident was conflicting. It was possible for the jury to believe Welch was an initial aggressor and it was possible for the jury to believe he was not. See Commonwealth v. Benham, 816 S.W.2d 186 (Ky. 1991). The instruction was appropriate given the facts of this case. There was no error.

## II. Jury Questions

Welch contends that the trial judge denied him due process of law and abridged his Fifth Amendment right to be present by answering jury questions during the guilt phase deliberations without consulting either counsel and without Welch being present and not in open court. We disagree.

The jury provided a written question to the trial judge regarding a fact that had been part of the testimony from one witness. The trial judge responded with the answer to that factual question. Neither Welch nor his attorney were present and were never

provided reasonable notice of the question or the answer. There is no question that this was improper procedural conduct. RCr 9.74 requires such questions to be answered in open court, in the presence of the jury, the defendant and counsel after reasonable notice to the parties. We are obligated, however, to review this error through the perspective of harmless error analysis. See RCr 9.24.

After a discussion with the judge requesting a review of specific testimony, the jury indicated it was seeking an answer to a specific factual question disclosed in that testimony. Rather then provide the testimony, the trial judge simply provided the answer as given by the witness. Welch relies on our decision in Mills v. Commonwealth, 44 S.W.3d 366 (Ky. 2001) where we found that it was a serious deprivation of a constitutional right when the trial judge in that case provided information to a jury that had not been admitted into evidence. The current situation is vastly different.

The deprivation of having counsel present in Welch's case and other errors associated with the trial judge giving the answer to the jury does not rise to the level of a deprivation that cannot be harmless. See Rushen v. Spain, 464 U.S. 114 (1983). There was no prejudicial effect from the actions of this trial judge. The trial was fundamentally fair and the error was harmless. RCr 9.24

### III. Prior Bad Act Evidence

Welch complains that the trial judge erred by failing to declare a mistrial when the lead detective testified that "hit a lick" meant "a robbery" and that Welch's friend told her in a prior interview that the deal with the drug dealer was supposed to be his and Welch's "last lick." Welch believes the testimony was inadmissible prior bad act evidence pursuant to KRE 404. We disagree.

4

Throughout the trial, there was a significant amount of testimony concerning the slang terms "lick" and "last lick". Several witnesses defined them as either terms describing a drug deal or a robbery. When a detective was discussing an interview with Welch's partner and friend, she stated that he had said this was to be the last one. When asked if she meant the last "lick", Welch moved for a mistrial because of failure to provide notice of prior criminal acts as required by KRE 404(b).

Because the partner and friend had testified earlier, the trial judge ruled that the detective's testimony was proper impeachment evidence and allowed it. The KRE 404(b) evidence was properly admitted for rebuttal purposes. <u>See</u> <u>Ernst v. Commonwealth</u>, 160 S.W.3d 744 (Ky. 2005). There was no error.

## IV. Song Title Evidence

Welch argues that it was error for the trial judge to admit evidence of the title of a rap song and allow the prosecution to explain the meaning of the song. He also maintains that the only purpose was to inflame the jury and attempt to demonstrate that Welch had a propensity for robbery and using intoxicants. He believes that the prosecution sought to use the testimony to show his state of mind and that he acted in conformity with this propensity when he killed the victim. We cannot find any error.

Welch and his friend and partner had written a number of songs and recorded them. Welch argues that the admission of the song title constitutes evidence of prior bad acts and that the prosecutor failed to provide notice as required by KRE 404(b). Welch stipulated to the admission of the song title. The prosecutor read the title to the jury and stated that the words indicated what the song was about. The mere title in no way identified Welch as being involved in any prior criminal activity. It did not identify

Welch at all. The evidence was properly admitted. There was no abuse of discretion. See Commonwealth v. English, 993 S.W.2d 941 (Ky. 1999).

## V. Motion For New Trial

Welch claims that the trial judge erred by denying his motion for a new trial without an evidentiary hearing. We disagree.

Welch provided an affidavit indicating that a witness had falsified testimony. Welch provided this affidavit to the trial judge and requested a new trial based on newly discovered evidence. A proper affidavit requesting a new trial because of newly discovered evidence requires it to be from the defendant and explain how due diligence prevented him from having that evidence prior to trial. See Wheeler v. Commonwealth, 395 S.W.2d 569 (Ky. 1965). That evidence must be shown to be of such decisive value that it would, with reasonable certainty, have changed the result or verdict. See id.

Here, the trial judge found the evidence to be merely cumulative. Absent an abuse of discretion, we will not substitute our judgment for that of the trial judge. See Foley v. Commonwealth, 55 S.W.3d 809 (Ky. 2001). There was no need to hold an evidentiary hearing. There was no error or abuse of discretion by the trial judge.

Welch received a fundamentally fair trial. He was not denied any state or federal right.

The judgment of conviction and resulting sentence is affirmed.

Graves, Roach, Scott and Wintersheimer, JJ., concur. Minton, J., dissents by separate opinion and is joined by Lambert, C.J. and McAnulty, J.

6

COUNSEL FOR APPELLANT:

Euva D. May
Assistant Public Advocate
Department of Public Advocacy
Suite 302, 100 Fair Oaks Lane
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General of Kentucky

Susan Roncarti Lenz
Assistant Attorney General
Criminal Appellate Division
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601-8204

# Supreme Court of Kentucky

2005-SC-000279-MR
AND
2005-SC-000806-TG

ROBERT KEITH WELCH                                                      APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
V.                      HONORABLE GARY D. PAYNE, JUDGE
INDICTMENT NO. 03-CR-00398-002

COMMONWEALTH OF KENTUCKY                                            APPELLEE

## DISSENTING OPINION BY JUSTICE MINTON

I agree with the majority that it is possible for a trial judge's ex parte

contact with a juror to be harmless error.[1] But I do not agree that the trial judge's ex

parte communication with this deliberating jury concerning a substantive issue in this

case can be dismissed as harmless error. So I respectfully dissent.

Kentucky Rules of Criminal Procedure (RCr.) 9.74 provides that "[n]o

information requested by the jury or any juror after the jury has retired for deliberation

shall be given except in open court in the presence of the defendant . . . and the entire

jury, and in the presence of or after reasonable notice to counsel for the parties."

Despite the unmistakably clear provisions of RCr 9.74, the trial judge in this case

inexplicably and alarmingly engaged in ex parte communication with the jury on multiple

---

[1]  Rushen v. Spain, 464 U.S. 114 (1983).

occasions. The jury wrote the trial court a note, stating simply that "Willie Allen's testimony regarding their activity when they left White Castle." The trial court's written ex parte response was, "[w]e are finding the tape and the portion of the testimony after they left White Castle. Is there a particular statement you are looking for? S/ Gary Payne." The jury then wrote, "[w]as Rob Welch in the car when Willie Allen hid the guns the first time?" And Judge Payne's written ex parte response was, "[y]es—he was in the car. S/ Gary Payne."[2]

We apparently have never been confronted with facts like these. But we have previously condemned violations of RCr 9.74 (and its predecessor) even if the violations appear to be less egregious than those found in this case.[3] As our predecessor Court forcefully held:

> It has been recognized since time immemorial, under the common law, the federal and our Constitution, that when one is charged with a felony the trial must be had in the presence of the accused, and that the accused has the right to be heard by himself and counsel. The Code provision makes it quite plain that if there be disagreement as to evidence— which must have existed here, else no reason for the request—any elucidation must not be had without notice to counsel. The reason is obvious, and particularly applicable here, where the witness had given contradictory testimony. It is beyond our power to make a rational guess as to the

---

[2] *Id.* In addition, though not argued by Welch, our review of the record shows that the trial court also spoke to the jurors in an ex parte manner during deliberation in the penalty phase. *See* Tape 22/2/05/VCR/10 A-7, 02:47:13-02:49:22. Also, another note from the jury appears to have gone unanswered by the trial judge.

[3] *See, e.g.,* Mills v. Commonwealth, 44 S.W.3d 366 (Ky. 2001) (holding that it was reversible error for a jury to be permitted to play tapes of evidence in the jury room during delibera- tions); Lett v. Commonwealth, 284 Ky. 267, 144 S.W.2d 505 (1940) (holding that it was reversible error, even absent an explicit showing of prejudice, for a stenographer to read portions of the evidence to a jury without the presence of defense counsel).

effect of the failure to have re-read the contradictory evidence.[4]

I recognize that jurors frequently will have ex parte contact with trial judges during the course of a trial.[5] And I also recognize that such contact will often be innocuous and, accordingly, will not alter the fundamental fairness of an otherwise constitutionally acceptable trial.[6] But this case does not involve an innocuous comment. Instead, the jury's question about whether Welch was in the car when Willie Allen hid the guns went to the heart of the tampering with physical evidence charge against Welch.[7] Yet, instead of declining to answer the questions without first consulting counsel for both Welch and the Commonwealth, the trial court simply answered, "[y]es—he was in the car." That answer, though supported by evidence in the record, constitutes a finding on an issue integral to at least one of the charges against Welch. Whether there was evidence to support the answer given by the trial judge is irrelevant

---

[4]   Lett, 144 S.W.2d at 509.

[5]   Rushen, 464 U.S. at 118 ("[t]here is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial.").

[6]   For example, a juror greeting a judge in a courthouse hallway or a jury panel asking the judge to arrange for a smoking break or a meal during deliberations would constitute harmless error. Indeed, the ex parte contact in Rushen, relied upon by the majority to find the trial judge's contact with the jurors in the case at hand to be a mere harmless error, was clearly more innocuous than that found in this case because the improper contact in Rushen involved only one juror, not the entire panel; and, unlike the case at hand, the trial judge and juror in Rushen "did not discuss any fact in controversy or any law applicable to the case." 464 U.S. at 121.

[7]   The jury instruction on tampering with physical evidence required the jury to convict Welch only if it found beyond a reasonable doubt that Welch "destroyed, concealed, and/or removed physical evidence, which he believed was about to be produced or used in an official proceeding, or Willie Wilson Allen, Jr. did so with the Defendant [Welch], intending that Willie Wilson Allen, Jr. do so, aiding him; AND . . . [t]hat the Defendant or Willie Wilson Allen, Jr. did so with the intent to impair its availability in that official proceeding."

under these circumstances because it is the sole province of the jury to decide which witness(es) to believe and which to disbelieve. Therefore, because I believe that Welch's constitutional rights were violated by the trial judge's ex parte contact with the jury concerning substantive issues in this case, I cannot join the majority's opinion, which I believe gives short shrift to this alarming issue. Furthermore, the majority's conclusion has the effect, desired or not, of approving a trial court's engaging in improper ex parte communication with a deliberating jury.

In conclusion, I believe the trial court's errors in this case were of more than sufficient magnitude to require Welch's conviction to be vacated. As then-Judge Cardozo eloquently stated, "[a] criminal, however shocking his crime, is not to answer for it with forfeiture of life or liberty till tried and convicted in conformity with law."[8] Because Robert Welch's liberty was forfeited in a trial that plainly was not conducted in conformity with the law, I respectfully dissent.

Lambert, C.J.; and McAnulty, J., join.

---

[8] People v. Moran, 158 N.E. 35, 37 (N.Y. 1927).