## Canter v. Commonwealth.

(Decided June 15, 1917.)

### Appeal from Woodford Circuit Court.

1. Homicide—Self-Defense—Plea of.—The proper subject of inquiry, under the plea of self-defense, for the commission of a homicide, is whether the accused believed and had reasonable grounds to believe that he was then in danger, and not whether it appeared to the jury, that he was in danger of death or bodily harm.

2. Homicide—Self-Defense—Instructions.—When the principle has, by the instructions, been clearly set forth upon which the jury should act, in determining when the accused had a right to act in self-defense, a judgment of conviction will not be reversed because of mere inaccuracies of language, or the omission of technical words, and where the facts clearly show that the verdict would have been the same with the omitted words left out, as it would if they had been inserted.

3. Homicide—Self-Defense—Instructions.—A qualification to a self-defense instruction, which does not in words submit the intention of the accused in provoking the difficulty is not prejudicial, where the acts submitted or the facts are such as to make the intention of the accused in provoking the trouble clear and unmistakable to kill or to do serious injury.

4. Homicide—Self-Defense.—Where one provokes a difficulty with the intention to kill or to do serious injury, before his right of self-defense returns to him, he must in good faith abandon his intention and withdraw or attempt to withdraw from the conflict.

5. Homicide—Self-Defense.—Where parties mutually engage in a combat, before one is excused in taking the life or doing serious bodily harm to the other, he must, in good faith, abandon his

purpose to fight and withdraw or attempt to withdraw from the conflict.

6. Homicide—Verdict.—Where a verdict is sought to be set aside because of the alleged bias of a juror, which was not brought to the attention of the court until after the verdict, the evidence of such bias must be clear and convincing before the court will set aside the verdict.

7. Criminal Law—Conversation With Juror.—Under sections 245 and 246, of the Criminal Code, the holding of a conversation with a juror, upon a subject not connected with the trial, is not prohibited, and is not prejudicial, when in the presence of the officer in charge of the jury and of the other jurors.

8. Criminal Law—Conversation Between Officer and Juror.—Under section 2257, Kentucky Statutes, a conversation held by an officer with a juror, after the jury has been sworn, and without the permission of the court, upon a subject not connected with the trial, is not such an irregularity as to require the verdict to be set aside, when it does not appear that anything prejudicial to the rights of the accused could have occurred.

WALLACE & HARRISS and H. A. SCHOBERTH for appellant.

M. M. LOGAN, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, Bascom Canter, a young man, thirty-three years of age, and who resided at Versailles, for the pleasure of the trip, made a journey to Lexington and returned the same day. He left Versailles at about eleven o'clock, and rode on a motor truck to Lexington, and returned to Versailles at about twenty-five minutes after three o'clock. He carried with him to Lexington a hand satchel or grip, and a pistol. The grip was taken, in which to bring back, as he says, at the request of a friend, a dozen bottles of beer, and the pistol was carried along, presumably, out of extreme caution, that no opportunity might be allowed to escape, upon which he might defend himself. When he returned to Versailles, the grip he bore contained the beer, and, as he says, also, the pistol and a flask of whiskey. He placed the grip with its contents in the rear end of a pool room, and after taking a drink of the whiskey, engaged in a game of pool. Certain witnesses say that, at that time, he was intoxicated, but he says that he had taken only the proverbial "two small glasses" of beer in Lexington, and no more. Very soon, Clarence Smith, an acquaintance of Canter, came into the room and took a seat and was observing the game. Can-

ter approached Smith and smote him upon the shins
with a billiard cue, as he says, in great good humor, but
Smith, however, objected to this treatment and an alter-
cation resulted, in which Smith said to Canter to go
away, that he was drunk. Canter denied being drunk.
Before the altercation ended Smith seized a billiard cue,
but upon the demand of the proprietor of the pool room,
put the cue aside. According to witnesses, Canter said to
Smith that he would "see him again," and according to
Canter's statement, "that he would see him when he was
in a good humor." Very soon Canter left the pool room,
and to a friend, whom he met on the street near the pool
room, he said, that he had been treated "dirty," and was
going home, which the friend advised him to do. In not
exceeding thirty minutes, Canter, who says that he went
to his home for supper, returned to the pool room, where
he found Smith engaged in a game of pool with one Roy
Bartlett. He said to Smith, that he "wanted to see him
a minute." Smith replied, "in a minute" or "wait
until I get the balls racked up," or some similar expres-
sion. Canter walked back to where the grip was and
took from it the pistol and whiskey, which he put in his
pockets, and then returned near to where Smith was
playing. Smith was standing beside one of the tables,
with the big end of the cue, he was using, upon the floor,
and the other end in his hand or under his arm, and
was engaged in taking the balls from a pocket in the
table, when, as all those present say, Canter advanced
upon Smith, with the pistol presented at him, with the
declaration, that "I told you something this evening,"
or "you tried to start something this evening," or some
kindred expression. Smith raised the cue he had and
began to strike Canter over the head and shoulders.
Canter, with his left arm raised to ward off the blows,
and the pistol still presented at Smith, withdrew a few
steps, when he discharged the pistol. The bullet from the
pistol took effect upon Smith and he fell down and died.
Those present, during the time that Canter was stepping
back from Smith, heard the pistol giving out a clicking
noise, and after the pistol was taken from Canter, it was
found, that by reason of some defect in its action,
when it was attempted to be discharged it would often
times revolve around with the clicking noise before it
would be discharged. Canter claims, that when he re-
turned from the rear of the pool room with his pistol
and whiskey, and came near to where Smith was play-
ing, that Smith passed by him and said something to him,

which he failed to remember or understand, and then Smith went to the side of the pool table and put his hand in his pocket, when he said to Smith, "You tried to start something this evening," and immediately drew the pistol and presented it; that Smith commenced and continued to strike him with the cue, and that he warned Smith to desist or he would be compelled to shoot, and when Smith knocked him to his knees, and the blood was running from a wound on his head, into his eyes, that he discharged the pistol. The witnesses present do not corroborate Canter in his statement in regard to warning Smith to desist, or with regard to Smith addressing Canter or putting his hand in his pocket, just before Canter assaulted him with the pistol.

Canter was indicted for the crime of murder, and his trial resulted in his conviction of voluntary manslaughter and the imposition of a penalty of confinement in the state reformatory for twenty-one years. The circuit court denied him a new trial, and he has appealed.

The grounds upon which he bases his appeal are these:

1. The trial court misinstructed the jury.

2. The bias of one member of the jury and his misconduct after having been sworn.

3. The misconduct of the jailer, of Woodford county, in talking with some of the jurors after they had been sworn, without the permission of the court, and the misconduct of the officer in charge of the jury, in permitting the jailer to converse with them.

(1. a.) The jury were advised by an instruction, that if they believed from the evidence, beyond a reasonable doubt, that the appellant unlawfully, and not in his necessary or apparently necessary self-defense shot and killed Smith, to find him guilty of murder, if it believed from the evidence, beyond a reasonable doubt, that he shot and killed Smith wilfully, feloniously and of his malice aforethought, and guilty of voluntary manslaughter, if it believed from the evidence, that he shot and killed Smith in a sudden affray or in sudden heat of passion, and without previous malice. The instruction advised the jury as to the penalty, which it might impose in the event it found the appellant guilty of murder, and, also, the penalty in the event it found him to be guilty of voluntary manslaughter. By further instructions, the jury was directed, that if it believed from the evidence beyond a reasonable doubt that appellant was guilty of murder or voluntary manslaughter, but had a reasonable doubt of which crime he was guilty, to find him guilty

of the lesser crime, that of voluntary manslaughter, but if it had a reasonable doubt of his being proven to be guilty of either crime, to find him not guilty. The meaning of the words "malice" and "aforethought," as used in the instructions, were defined by another instruction. There is no complaint of the instructions above given, and it does not seem that they are subject to any just criticism.

The instruction, which is complained of, was the one defining the law of self-defense, as applied to the appellant under the facts attending the homicide, and was as follows:

"If you believe from the evidence that at the time Bascom Canter shot and killed the deceased, Clarence Smith, if you shall believe from the evidence beyond a reasonable doubt that he did so, he believed, and had reasonable grounds to believe that he was then and there in danger of death or the infliction of some other great bodily harm at the hands of the deceased, and that it was necessary or was believed by the defendant, in the exercise of a reasonable judgment, to be necessary, to shoot and kill the deceased, in order to avert that danger, real or to the defendant apparent, then you will find the defendant not guilty on the ground of self-defense and apparent necessity thereof; but, if you should believe from the evidence beyond a reasonable doubt, that the defendant, when he was in no danger, or apparent danger, of death or great bodily harm at the hands of Smith, began the difficulty by assaulting the said Smith, by drawing a gun upon him, and by willingly continuing the difficulty up to the time of firing the shot and so made the danger to himself excusable on the part of Smith, in his necessary or apparently necessary self-defense, or if the combat was voluntarily engaged in by both, then in each event the defendant cannot be acquitted on the ground of self-defense, unless the jury should believe that the defendant had abandoned, in good faith, his intention, if he had any, to bring on a difficulty for said purpose, and withdrew in good faith from the conflict, if they believe he entered into same and engaged in the same willingly with deceased, before he shot deceased."

That portion of the instruction by which the jury was told, that if it believed from the evidence that at the time the appellant shot and killed Smith, he then believed and had reasonable grounds for believing, that, he was then and there in danger of losing his life or suffering great bodily harm at the hands of Smith, and that it was nec-

essary or was believed by appellant, in the exercise of a reasonable judgment, to be necessary to shoot and kill Smith in order to avert the danger, real or to the appellant apparent, to find appellant not guilty, upon the ground of self-defense and apparent necessity, is not complained of; but the remaining portion of the instruction, wherein a qualification is put upon his right to shoot Smith in self-defense, to the effect, that if the jury believe from the evidence beyond a reasonable doubt, that, if appellant was in no danger or apparent danger of death or serious bodily harm at the hands of Smith, and he began the difficulty by assaulting Smith, drawing a pistol upon him, and willingly continued the assault up to the time of firing the shot, and thus made the danger to himself excusable on the part of Smith, in the necessary or apparently necessary defense of himself from the assault, or if the combat in which Smith was killed was voluntarily entered into by both, then in either event the appellant should not be acquitted upon the ground of self-defense, unless he, before firing the fatal shot, had in good faith abandoned his intention, if any he had, of provoking trouble, and in good faith withdrew from the conflict, if it believed he entered into or engaged in same willingly, is criticised for several reasons.

It is contended that the instruction makes the right of appellant to assault Smith with the pistol depend upon the belief of the jury from the evidence as to whether appellant was then in actual danger, or whether there was then any apparent danger to appellant from Smith, as it appeared to the jury, instead of the belief of appellant or reasonable grounds for his believing, that he was then in danger. With regard to this criticism, the appellant could be excused for assaulting Smith with the pistol, by pointing it at him in a way to threaten his life, accompanied with an attempt to discharge it, only, by the belief of appellant, accompanied with reasonable grounds for such belief, that he was then in imminent danger of death or great bodily injury at the hands of Smith, and that the assault with the pistol appeared to him, in the exercise of a reasonable judgment, to be necessary for the purpose of protecting himself from such danger. The same principle would govern the right of self-defense as under any other circumstances. There can be no doubt, that in the application of the law of self-defense, it is the duty of the court to so advise the jury, that in determining when the accused has a right to exercise it to the extent of taking life or doing great bodily harm, that the

circumstances of the occurrence should be viewed from the standpoint of the accused and not from the standpoint of the jury—that is, the jury should not determine the guilt or innocence of the accused from its opinion, as to whether or not a danger to the accused actually existed, and would or would not so appear to them, but the proper subject of inquiry is, whether or not the accused believed and had reasonable grounds for the belief, that a danger was then impending. The danger may not be real, but, if from the appearances, the accused believed it to be real and the appearances were such as to justify an ordinarily reasonable man, under all the circumstances surrounding the accused, in arriving at such a belief, then the accused is excused when he acts upon such belief. Munday v. Com., 81 Ky. 234; Hollaway v. Com., 11 Bush 344; Cleveland v. Com., 31 R. 115; Austin v. Com., 28 R. 1087; Roberson, vol. 1, section 163; Hech v. Com., 163 Ky. 518; Biggs v. Com., 164 Ky. 223; Harvey v. Com., 5 R. 203; Henderson v. Com., 5 R. 244; Rainwater v. Com., 5 R. 103; May v. Com., 3 R. 474; Cockrill v. Com., 95 Ky. 22; Reynolds v. Com., 114 Ky. 912; Burton v. Com., 23 R. 1915; Adkins v. Com., 26 R. 496; Ellis v. Com., 30 R. 348; Dossenbach v. Com., 30 R. 749. It will be observed that the instruction, which is complained of, without the qualifying clause in the latter portion, submits the appellant's right of self-defense in a manner above criticism. It directs the jury, that if it believes from the evidence that the appellant, at the time he shot Smith, believed and had reasonable grounds to believe, that he was then and there in danger of death or of the infliction of great bodily harm at the hands of Smith, and that it was necessary, or was believed by him to be necessary, to shoot and kill Smith in order to avert the danger, real or to the appellant apparent, to find appellant not guilty, on the ground of self-defense and apparent necessity. The qualification to the above is thus stated, ''but if you shall believe from the evidence beyond a reasonable doubt that the defendant, when he was in no danger or apparent danger of death or bodily harm at the hands of Smith, etc.'' This is the portion of the instruction, which is complained of as being in contravention of the principle, that it is the danger, as it appears to the accused, which should be considered and not the danger as it appears to the jury. The danger or apparent danger, to which the instruction previous to that clause, addresses itself, is the danger, as it appeared to the appellant, and it does not appear that the

jury could have been misled by the phraseology, although inapt, as to whom the "apparent danger," used in the instruction, applied. True, more apt terms should have been used to properly define appellant's rights, but when the foregoing portion of the instruction carefully defined the circumstances under which he was excusable for taking the life of Smith, and when the facts of the case, as proven, show beyond cavil, that Smith was standing quietly beside the table and engaged in taking out the balls from the pockets, and was making no demonstration of any character toward appellant when he made the assault with the pistol, the wording of the instruction could not have been prejudicial. If the testimony of all those present is to be believed, the appellant had no reasonable ground, earthly, for believing that he was in any danger at the hands of Smith at the time he assaulted him with the pistol, and his own statement, if it can be considered as a contradiction of the other witnesses who testified, showed that he relied upon reasons too flimsy to excuse his conduct. As was said in Buechel v. Com., 7 R. 258, where an erroneous instruction was given defining malice, the court refused to reverse the conviction, because the evidence clearly showed that the accused was guilty of murder, and that there was not a mitigating circumstance. In Ross v. Com., 10 R. 558, where the jury had been instructed, that if the accused was present and aided and assisted another in the commission of a murder, and the proof showed that he held a light, while his confederate struck the blows, it was complained that the instruction did not require the jury to find that he was actuated by malice, but this court refused to reverse the judgment, because of that error, when the proof showed that the jury was obliged to have found that malice existed, as there could be no explanation of the acts of the accused, which the jury was required to find from the evidence beyond a reasonable doubt, upon any other hypothesis, than that the accused was actuated in his conduct by malice. This court has been careful in trials of indictments for murder and manslaughter growing out of homicides, and where the accused has any evidence upon which to base such an instruction, to accurately define the accused's right of self-defense, but where the principle has been clearly set forth upon which the jury should act in determining when the accused had a right to act in self-defense, it has refused to reverse convictions because of mere inaccuracies of language, or the omission of technical words, or the omission of any

phrase in the qualification of the law of self-defense, where the facts clearly show that the verdict would have been the same with the words omitted in the instruction, as when inserted. A qualification to an instruction defining the right of self-defense in the exact language in which the qualification, in the instant case, is given, was directed by this court to be given in Kennedy v. Com., 31 R. 546, and approved in Kennedy v. Com., 33 R. 83, and a similar instruction was approved in Cash v. Com., 127 S. W. 492.

(1. b.) The second criticism of the instruction is, that it omits to require, in order that appellant should be deprived of the right of self-defense, that he should have wilfully and feloniously caused the difficulty for the purpose and with the intention to kill or seriously harm Smith, and the argument is, that, if he had caused the difficulty in which Smith was killed by some act not reasonably calculated to provoke a difficulty with Smith, or if he had unintentionally done some act, which stirred Smith to attack him, that he would not have thereby been deprived of the right of self-defense. Pertaining to this subject, it is said in Roberson, vol. 1, page 212:

"The intention with which a difficulty is brought on is of the highest importance and must be submitted to the jury. That intention must be to kill or seriously injure, and must be confined to the immediate occasion of the killing, before the accused can be deprived of the right of self-defense. He cannot, therefore, be deprived of the plea of self-defense because of words innocently spoken by him or in jest, or some act done by him not calculated or intended to do so, and not resorted to for a shelter for intended wrong, may have contributed to bring on the difficulty."

The learned author, further discussing the subject, says, however, that the courts, which have held that the intention in bringing on the difficulty must be to kill or seriously injure probably did not mean that the accused would be excused, altogether, if he brought on the trouble without such intent, as if he should provoke the combat, or produce the occasion, with the intention of making a mere battery upon his adversary, as in such case he would be guilty of manslaughter at least. However, an instruction, which does not in words submit the intention of the accused in provoking the difficulty, is not prejudicial, where the acts submitted or the facts are such as to make the intention clear and unmistakable in provok-

ing the trouble. Main v. Com., 13 R. 346; Godfrey v. Com., 15 R. 3; Crawford v. Com., 15 R. 356; Combs v. Com., 15 R. 659; Bennyfield v. Com., 13 R. 446; Hasson v. Com., 10 R. 1054; Allen v. Com., 10 R. 582; Blankenship v. Com., 23 R. 1995; Johnson v. Com., 95 Ky. 580. The submission to the effect, that when appellant was not in any apparent danger at the hands of Smith, he began the difficulty by assaulting Smith by drawing a pistol upon him, is a sufficient submission of the intent with which appellant, provoked the difficulty. It precludes the idea that appellant may have provoked the difficulty with Smith unintentionally, or by some act not reasonably calculated to provoke trouble, or by some innocent word or jest. To assault one with a deadly weapon, such as a pistol, precludes the idea that the intention is not to kill or seriously injure, as when one attempts to shoot another with a pistol, the intention to kill or seriously injure is clear and unmistakable.

(1. c.) Another criticism of the instruction is, that in accordance with it, if appellant began the difficulty by assaulting Smith by drawing a pistol upon him, and thus made the danger at the hands of Smith excusable upon the part of Smith, in the necessity, which was imposed upon him by appellant to defend himself from the assault and threatened injury before the right of self-defense returned to him, that he must have, before he fired the fatal shot, in good faith, abandoned his purpose to provoke trouble and withdrew from the conflict. It is insisted that the word "or" should have been used instead of "and," so that the instruction should have read, "abandoned his purpose to bring on a difficulty or in good faith withdrew from the conflict." This contention is not tenable, because it would require both an abandonment of the intent to injure and a withdrawal or an attempted withdrawal from the conflict to restore to the appellant the right of self-defense. To withdraw or attempt to withdraw, without an abandonment of the purpose to injure, would be a mere subterfuge, and an abandonment of the purpose to kill or injure Smith, without a withdrawal or attempted withdrawal from the conflict, would be without signification. The language objected to has been substantially approved in Truax v. Com., 149 Ky. 699; Terrill v. Com., 76 Ky. 246; Collier v. Com., 160 Ky. 338; Harris v. Com., 140 Ky. 41.

(1. d.) The remaining objection to the instruction is, that if the appellant and deceased, both, voluntarily engaged in the combat, in which deceased was killed, that

appellant could not be excused upon the ground of self-defense, unless before the fatal shot was given, he abandoned the purpose of shooting and in good faith withdrew from the conflict. That such is the law governing the entering into a mutual conflict is not contraverted, but it is insisted that there is no evidence upon which to base such a submission. The theory of the Commonwealth, it is true, is that appellant armed himself and sought out the deceased with the purpose of killing or doing him serious bodily harm, and the deceased acted only in his necessary self-defense; and the theory of appellant is that he was acting only in self-defense, and for the purpose of protecting himself from attack, in all, that he did, but the jury did not accept either of these versions of the conflict, because, if it had accepted the former it must have found the appellant guilty of murder, and if it had accepted the latter version, it would have found a verdict of not guilty. There was evidence, which tended to prove the contention of the Commonwealth, and, also, evidence from which the jury was justified in inferring that the combat was a mutual one and voluntarily entered into by both appellant and deceased, and the court properly advised the jury as to the law governing mutual combat.

The instruction, so far as it attempted to qualify the right of self-defense on the part of appellant, is not approved, but under the facts of this case it was not prejudicial to appellant's substantial rights.

(2.) The bias of one of the jurors, which is relied upon for a reversal, is the claim, that one of the jurors, some time before he was called or accepted, had formed an opinion adverse to the appellant and had expressed same, and the misconduct of the juror relied upon for reversal is, that this same juror, after he was sworn and while the cause was on trial, with permission of the officer in charge of the jury, had a conversation over the telephone with his wife. The claim that the juror had expressed an opinion adverse to the appellant before he was accepted upon the jury was supported by the affidavit of one Price, a friend of appellant and in the employment of appellant's father, and who did not think to divulge his information in regard to a remark made by the juror to him, adverse to the appellant, until after the trial. The truth of the statement attributed to the juror by Price is denied by the affidavit of the juror, and there is no other circumstance developed, which corroborates Price. After the jury had been sworn and were in charge

of the sheriff, and in his office in the court house, this juror sought permission of the sheriff to communicate with his wife over the telephone. The permission was granted and the juror, in the immediate presence of the sheriff and his fellow-jurors, communicated with his wife. The sheriff and jurors, from their proximity, could hear what the juror said, but, of course, could not hear what the juror's wife said to him, but there is no claim or contention that anything was said with reference to the cause on trial or anything in connection with it. As to the bias imputed to this juror by the affidavit of Price, coming to the knowledge of the court after the verdict, as it did, should be proven by clear and convincing evidence, before the court would be justified in setting aside the verdict. Giving to the decision of the trial court the weight to which it is entitled upon a question of this character, the evidence of the proof of the bias of the juror, in question, is not sufficiently convincing to now justify disturbing the verdict. Mansfield v. Com., 163 Ky. 488; Deaton v. Com., 162 Ky. 188; Allen v. Com., 175 Ky. 46. With regard to the misconduct attributed to this juror, it should be borne in mind, that sections 245 and 246, Criminal Code, provide, that when a jury shall be kept together, in charge of an officer, that he shall not permit any person to speak to or communicate with the jury on any subject connected with the trial, and must not do so himself, and the jurors must not permit anyone to speak to or communicate with them upon any subject connected with the trial, and must not converse among themselves an any subject connected with the trial. To communicate with a juror about a matter not connected with the trial and under proper circumstances is not prohibited by either of the above sections of the code, and it is not only the duty of the juror to refrain from communicating with any person, but it is the duty of the officer in charge to see that no person communicates with the jury, or any member of it, upon any subject connected with the trial. It has, however, never been held, that to speak to a juror upon a subject not connected with the trial is a ground for reversal of the verdict, or that such communication, when made in the presence of the officer in charge and the other jurors, has never been held to be of such a prejudicial character as to warrant setting aside the verdict of the jury. The permitting of a juror to hold a conversation over the telephone where the officer cannot hear, what is said to the juror, is a practice not to be approved or commended, and

under similar circumstances should be universally condemned.

(3.) It is urged that the judgment should be reversed because the jailer of the county violated section 2257, Kentucky Statutes, by conversing with the jurors after they had been sworn, without the permission of the court. The statute referred to provides as follows:

"No sheriff or other officer shall converse with the jury or any member thereof upon any subject after they have been sworn, without leave of the court."

This statute seems to be directed principally to the conduct of the officer, and is one of the safeguards, which the law attempts to throw around the juries to protect their verdicts, and, without question, should be rigidly enforced, and the officer who violated it should be held to a strict accountability, but if the conversation held by the officer with the jury was upon a subject not connected with the trial, in any way, it is impossible to see how such a conversation could prejudice the substantial rights of one on trial for a crime. The circumstances, in the instant case, were, that the sheriff was keeping the jury together in his office at night during an adjournment of the court, so that the jury would have a suitable place to remain and be free from the interference or coming in contact with other persons until the time for retiring to their beds for the night. The sheriff requested the jailer to provide chairs, tables, heat and light, in the room, for the convenience and comfort of the jury, and in obedience to this request the jailer came into the office for that purpose, when some of the jurors desiring to engage in a game of cards, requested the jailer to remain and assist in making out a sufficient number to engage in the game, which the jailer did, remaining for some time in the room engaged in the game. There was no pretense that any conversation was had upon any subject connected with the trial, or upon any subject, which could have in any way affected or influenced the verdict, and the affidavits of the sheriff, jailer, and, some of the jurors, show that whatever was said by the jailer was in the immediate presence and hearing of all the jurors and the sheriff, and that there was no mention of the trial or of any similar case. The purpose of the jailer, in being present, seems to have been an innocent one, and it is impossible to see how the jailer's misconduct or the misconduct of the sheriff in permitting him to have conversation with the jurors, when no mention was made

of any subject connected with the trial, could have in any way been prejudicial to appellant's rights.

Under section 340, Criminal Code, this court is not authorized to reverse a judgment of conviction for a felony, except for an error, which appears upon the record, and not then unless upon consideration of the whole case the court is satisfied, that the substantial rights of the accused have been prejudiced by such error. The reason for this statute is apparent, when experience has taught all that it is almost impossible for a criminal trial to be had in which some immaterial error does not creep into the proceedings, and it would be a vain thing to be reversing judgments of conviction, where the accused has had a fair trial, and where the errors complained of could have in no way influenced the result of the trial.

Upon consideration of the whole case, there does not appear any error, which prejudiced the appellant's substantial rights, and the judgment must be affirmed.