## HORTON v. COMMONWEALTH.

Court of Appeals of Kentucky.

June 19, 1951.

Roy W. House, Manchester, for appellant.

A. E. Funk, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

WADDILL, Commissioner.

This is the second appeal of this case. Upon his first trial, appellant was convicted of the murder of Hugh Gregory, and was sentenced to life imprisonment. This Court reversed the case, the opinion is reported in 312 Ky. 63, 226 S.W.2d 526. Reference thereto is invited for a recitation of the facts.

The second trial of appellant likewise resulted in his conviction, his punishment being fixed at twenty-one years in prison.

Appellant relies solely on two grounds for reversal. They are: (1) Implied bias of a trial juror, Cr.Code Prac. § 210; (2) Separation of the jury. Cr.Code Prac. § 244; KRS 29.310.

In support of his first point appellant says that Hugh Smith, a trial juror, is related by consanguinity and affinity to deceased, which relationship was known to

the juror, but was unknown to appellant and his counsel until after trial. To sustain this contention he filed the affidavits of Robert Hibbard and Harrison May. The charges contained in Hibbard's affidavit, regarding the juror's relationship to the decedent, are without merit. Admitting the allegations contained therein, there is no relationship shown between the juror in question and the decedent, either by blood or by affinity.

After Hibbard's affidavit was filed, Hugh Smith filed his affidavit, to the effect that at the time he qualified as a juror he did not recognize any relationship existing between deceased and himself, as set out in Hibbard's affidavit; that he does not now recognize any relationship, and that he was not affected by it in agreeing to the verdict, nor did he know that such were the facts at the time of his acceptance on the jury and during the trial of the cause.

Appellant then filed the affidavit of May. It reveals that Hugh Smith is the first cousin of decedent's grandmother. Appellant argues that the juror's denial as above stated, does not contradict the statements made in the May affidavit. We cannot agree with this contention. It would be an idle gesture, and also repetitious, for the juror to again file his affidavit denying his knowledge of any kinship to the deceased. We hold the juror's affidavit to be a response to all charges of this nature.

■ An accused is entitled to know on the voir dire examination, if such is known by the prospective juror, whether the juror is related by consanguinity or affinity to the deceased. This Court has held that if on voir dire examination, the juror falsely states that he is not related to deceased, and is permitted to serve on the jury, and it was thereafter made to appear by accused that the juror was so related to the deceased as to disqualify him as a juror in the case, the burden is shifted to the Commonwealth to overcome this presumption by proof that the juror was ignorant of the relationship. Leadingham v. Commonwealth, 180 Ky. 38, 201 S.W. 500.

We are of the opinion that the Commonwealth, by its response filed to appellant's motion for a new trial, has rebutted such presumption, and has established, at least to the satisfaction of the court, that the juror was unaware of kinship to the deceased.

It is the rule in this Commonwealth that where the relationship of a juror to a deceased is remote and unknown to the juror at the time the verdict was rendered, it does not constitute a valid ground for reversal. Crum v. Commonwealth, 209 Ky. 823, 273 S.W. 520; Wyatt v. Commonwealth, 255 Ky. 454, 74 S.W.2d 928; Sizemore v. Commonwealth, 210 Ky. 637, 276 S.W. 524.

In Miracle v. Commonwealth, 148 Ky. 453, 146 S.W. 1136, the court held that where it is shown that a relationship existed between a juror and deceased and the juror does not know of such kinship, he stands toward the accused as an entire stranger, insofar as the affinity or blood might affect his verdict. It is the knowledge of the kinship and the feeling that arises from it that works the disqualification. If the knowledge is absent the disqualification disappears.

■ It appears in this case that the kinship of the juror is remote and that he was unaware of his relationship to the deceased when he served on the jury. Under these circumstances, we are of the opinion that a reversal of the conviction is unwarranted upon this ground.

We now reach the second ground relied upon for reversal. Appellant charges misconduct of jury and the officer in charge of them, in permitting them to separate and converse with others during the progress of the trial. He says that such misconduct was unknown to appellant and his counsel, until the jury had returned its verdict. A review of the alleged improprieties is in order.

■ It is stated that while six men were tentatively accepted for jury service, but subject to challenge, while under guard, visited the home of a great-aunt of deceased; that one of them, who was later accepted as a juror, in the absence of the guard and the other prospective jurors, was permitted to go into her kitchen and talk with her.

It will be observed that it is only "after the jurors are accepted" that they are not to be permitted to separate. Perhaps it is the better practice, in cases where accused may be punished capitally, or by life imprisonment, to keep the jury together in charge of an officer sworn for that purpose at all times after they have qualified for service on that particular jury. However, our Criminal Code does not make this mandatory, Cr.Code Prac. § 244. The court's failure to do so will not be treated as a cause for reversal. Bowman v. Commonwealth, 146 Ky. 486, 143 S.W. 47.

■ Appellant further charges that after the jury was accepted, it was permitted to separate into groups while at its lodging house; that a member of the jury was permitted to talk with a man inside the front door of the courthouse, while the guard and the rest of the jury were on the outside of the courthouse; and that another member of the jury was permitted to obtain a coat out of an automobile, and converse with persons therein, in the absence of the guard and the other jurors.

Under our system of trial by jury, much reliance must be placed upon the integrity of the jurors. It is not within the contemplation of the Criminal Code of Practice, § 244, nor of the Statute, KRS 29.310, that the jury must be put in a vacuum during the trial. Members of a jury must be accorded that degree of personal freedom from supervision that is essential to their well being. Acts of necessity, comfort and personal convenience are illustrations of a narrow interpretation of such freedom. This court has held that it was not error for a jury to be taken by its guard to places of amusement, to restaurants and the like. In instances where there is a temporary withdrawal of a juror from the immediate presence of his fellow jurors, or the guard, unless it be shown that something improper occurs, the court will not grant a new trial upon that ground. Wynn v. Commonwealth, 188 Ky. 557, 222 S.W. 955; Trent v. Commonwealth, 292 Ky. 735, 166 S.W.2d 1002; Mansfield v. Commonwealth, 163 Ky. 488, 174 S.W. 16.

It is almost impossible for a criminal trial to be had in which some immaterial error does not occur during the proceedings. It would be an injudicious practice to reverse judgments of conviction where the errors complained of could have in no way influenced the result of the trial.

Under Section 340 of the Criminal Code of Practice the court is unauthorized to reverse a conviction for a felony, except for an error which appears upon the record, and not then, unless upon consideration of the whole case the court is satisfied that the substantial rights of the accused have been prejudiced thereby. We find no such error appearing in this case.

Judgment affirmed.