**Dennie ROARK, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 6, 1959.

---

Earl R. Cooper, Salyersville, for appellant.

Jo M. Ferguson, Atty. Gen., William L. Brooks, Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

Appellant, Dennie Roark, killed Willard Back and, as a result, was convicted of voluntary manslaughter. He was sentenced to confinement in the penitentiary for a period of five· years.

Appellant relies on these grounds for reversal: (1) The verdict was not supported by the evidence, and (2) the jury, upon retiring to reach a verdict, but before entering the jury room, mingled with the crowd in the court room and thereafter a deputy sheriff entered the jury room with them and remained there behind closed doors for a short period.

The killing was the result of a sudden engagement between two families and although it bears the earmarks of a family feud, it was not such an encounter because the Roarks and the Backs, who lived in the same section of Magoffin County, had known each other for many years and never had had any previous trouble.

On January 24, 1958, both the Roarks and the Backs, at about the same time, started a journey by automobile to Salyersville. Both cars were crowded.

In the Roark car were Dennie Roark, his wife Jane, his daughter Lizzie and her baby, Lewis and Leander Roark, nephews, Luna Roark, the wife of Leander, and their child. Cletus Roark, a son, was driving the car.

In the Back car were Dewey Back, father, Dillard Back, son, Willard Back, the deceased son, Sam Darnell, son-in-law, and Ruby Darnell his wife. Sam Darnell was driving the car.

The Back car was proceeding down a secondary highway which leads toward highway 30, when the car driven by Cletus Roark came out of the driveway in front of the Back car. Sam Darnell called out, "If you don't watch yourself, you're going to get killed or maybe kill a whole bunch." (The Roarks say the windows of the car were up and they did not hear this). The Backs proceeded toward Salyersville and the Roark car passed them on a hill when the Back car was having trouble ascending it. At an intersection of the secondary road with highway 30, Cletus Roark pulled across the highway and stopped off the blacktop road to "find out what was wrong with the Back car."

The Roark witnesses testified that when the Back car reached the intersection Sam Darnell jumped out of the car to meet Cletus Roark and he was followed by the rest of the Backs. Sam Darnell took his hat and coat off. Jane and Lizzie Roark than got out of the car. Jane had the intention of getting between Cletus Roark and Sam Darnell. Dennie Roark also got out of the car and called to Dewey Back, the other father, "You take Sam and I will take Cletus."

Dennie Roark testified that about that time he heard his daughter Lizzie scream and saw that Dillard Back was holding her with her head down in the Back car and with her feet extending to the ground. Almost simultaneously he saw that Ruby Back had Jane Roark, his wife, down on the ground with Sam Darnell standing over her. Thereupon, Dennie Roark ran to the assistance of his daughter, and Cletus Roark to the assistance of his mother. Dennie Roark grabbed a short plank and broke it across Dillard's back who exclaimed "Who in the hell hit me"?

The witnesses were, so far, generally in accord as to the occurrences, but they sharply differed as to what followed.

The Roark witnesses testified that when appellant hit Dillard Back with the board, Willard started toward appellant and reached for him with his left hand and had a drawn knife in his right hand. Whereupon, appellant stepped back, pulled a pistol from under his overalls and fired one shot. When Willard fell he dropped the knife on the ground and Dewey Back picked it up, closed the blade and put it in his pocket.

The Back witnesses testified that the deceased had no weapon of any kind, had made no move toward appellant, that "he never bothered anybody" and was standing still when shot and was not a participant in the fight.

Appellant argues that the testimony given by the Backs that Dennie Roark shot Willard Back when he had no knife, was unarmed and was not doing anything to anyone, is unbelievable in that the strongest evidence is reason and such evidence is beyond reason.

We agree that under usual patterns of behavior, it would be unusual for Willard Back to stand idly by and not attempt to help other members of his family actively engaged in the fracas, but we cannot so hold as a matter of law. It is also entirely possible that Willard was reluctant to enter the fray, and acted in the manner described by several witnesses.

■■■ Proper instructions on self-defense were given to the jury and there is ample evidence upon which to base their conclusion that Dennie Roark did not shoot in self-defense. The evidence was conflicting, and the weight of the evidence and the credibility of the witnesses should be determined by the jury. Jones v. Commonwealth, Ky., 281 S.W.2d 920; Shepherd · v. Commonwealth, 306 Ky. 121, 206 S.W.2d 485.

Appellant's second ground for reversal was first raised by the motion and grounds for a new trial. It consists of two parts: (1) After the case was submitted to the jury, a deputy sheriff entered the jury room with the jurors, closed the door, and remained in the room for a short time; and (2) while under special guard, the jury was permitted to separate and the jurors were not kept together as required by law.

■■■ The first ground, which is supported by affidavit, contains only the bare statement that the deputy sheriff entered the room for a few minutes. The second part is not supported by affidavit. Nevertheless two affidavits were filed in response which set forth some facts and we will discuss the questions raised.

The Magoffin County courthouse was destroyed by fire and at the time of this trial a room in the American Legion Building which is approximately 45′ x 45′, was used for holding court. Adjacent to this room is a 10′ x 12′ room used by juries, although it is customarily used as a kitchen by the American Legion.

At the conclusion of the trial, the court directed W. T. Arnett, deputy sheriff, to prepare the room for jury service. It was necessary to move chairs from the main court room into the small room for use by the jury, and Arnett, along with some of the jurors, moved a number of chairs to the jury room. The day was hot (April 22) and the deputy propped open the only window for ventilation.

By affidavit Arnett states: "That all of the jurors were there together and that if the door to the small jury room was at any time closed while he was inside with the jurors, he did not notice same. That he had no interest in the outcome of the case and he did not say anything to any one of the jurors about the case, nor did any of the jurors say anything relative to the case to his knowledge during the time he was preparing the said jury room for them. That upon getting the jury room ready as

above set out, he retired to the outside thereof and remained until the jury came out with their verdict."

Under the circumstances, we find nothing improper in the action of the deputy sheriff in attempting to make the small jury room more comfortable before the jurors began consideration of the case.

We have grave doubts as to whether part (2) of appellant's second ground for reversal is properly before us. The alleged mingling of the jury with the crowd in the court room is not supported by affidavit and appellant did not at the time object nor, even later, give details, by affidavit, of the averred mingling. The argument based on facts stated in the brief comes too late. Belcher v. Commonwealth, 247 Ky. 831, 57 S.W.2d 988.

We held in Horton v. Commonwealth, Ky., 240 S.W.2d 612, 614, that under our system of trial by jury, much reliance must be placed upon the integrity of the jurors and "it is not within the contemplation of the Criminal Code of Practice, § 244, nor of the Statute, KRS 29.310, that the jury must be put in a vacuum during the trial."

It was also pointed out that even where there is a temporary withdrawal of a juror from the immediate presence of his fellow jurors or the guard, unless it be shown that something improper occurred, the court will not grant a new trial on that ground. See also Wynn v. Commonwealth, 188 Ky. 557, 222 S.W. 955; Trent v. Commonwealth, 292 Ky. 735, 166 S.W.2d 1002; and Mansfield v. Commonwealth, 163 Ky. 488, 174 S.W. 16.

The separation of which appellant complains consisted of the jury being near other people in the temporary court room when they assisted the deputy sheriff in obtaining chairs for the jury room. We have found nothing improper in that action.

We have been shown no error in the trial of this case and the judgment is affirmed.