**Willie Gaines SMITH, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 14, 1962.

Rehearing Denied May 10, 1963.

Charles Landrum, Jr., James Park, Jr., Lexington, for appellant.

John B. Breckinridge, Atty. Gen., Wayne J. Carroll, Asst. Atty. Gen., Frankfort, for appellee.

MONTGOMERY, Judge.

Willie Gaines Smith appeals from a judgment fixing his punishment at death. He was indicted jointly with Hassie Cane Martin for the willful murder of Olin Alexander. See Martin v. Commonwealth, Ky., 361 S.W.2d 654 (1962). They were tried separately.

Appellant urges that: (1) The trial court erred in denying his motion for a change of venue; (2) his alleged confession was obtained in violation of KRS 422.110 and of the Kentucky and United States Constitutions; (3) certain evidence was admitted erroneously; and (4) the jury was permitted to separate improperly.

Appellant moved for a change of venue and claimed that he could not obtain a fair and impartial trial in Fayette County because of the state of public opinion and because of the prejudice aroused by newspaper publicity. The motion was supported by two affidavits in accordance with KRS 452.220(2). At the hearing on the motion, no other affidavits and no witnesses were offered in behalf of appellant. Copies of local newspapers were filed in which the killing and arrest were reported and which contained an editorial congratulating the Lexington Police Department for its fine work in arresting appellant and Martin. The editorial linked the Alexander killing with "the brutal pistol-whipping of four persons at another liquor store" which occurred two nights before the Alexander killing.

The Commonwealth introduced the testimony of twelve witnesses in opposition to

the motion. These witnesses comprised professional and business men and a farmer. In substance, they recalled vaguely the newspaper publicity, said that they had heard little discussion and slight expression of opinion about the matter, and considered that appellant could obtain a fair and impartial trial in Fayette County.

A nunc pro tunc order overruling the motion was entered after the trial. Appellant questions this procedure, but the objection is without merit. When the trial court proceeded with the trial, it, in effect, overruled the motion and denied the request for a change of venue. The nunc pro tunc order was proper to preserve the earlier ruling.

The action taken by the trial judge in passing on a motion for a change of venue is a matter within his discretion. On review it will not be disturbed unless it is shown that such discretion was not justly and properly exercised under the circumstances. Tarrence v. Commonwealth, Ky., 265 S.W.2d 40, cert. denied, 348 U.S. 899, 75 S.Ct. 220, 99 L.Ed. 706; Dees v. Commonwealth, Ky., 314 S.W.2d 514. There was ample evidence to sustain the action of the trial court. Carnes v. Commonwealth, 306 Ky. 55, 206 S.W.2d 44. There was no error in the ruling on the motion for a change of venue.

Olin Alexander was killed on the night of March 18, 1960, during the holdup of a liquor store. A .32 caliber bullet was taken from his skull.

Appellant and Hassie Cane Martin were arrested in Cincinnati between 4 p. m. and 6 p. m. of the day after the killing. On the morning of March 21, 1960, appellant gave a detailed statement of his actions and movements in association with Martin covering the period from about 2:30 p. m. of Friday, the day of the killing, until his arrest. The statement was given to Captain Bryan Henry of the Lexington Police Department and James H. Lewis, a state probation and parole officer.

In his statement appellant admitted full participation in the holdup but, in effect, denied the shooting and attempted to place the blame for the killing on Martin. According to the statement, Martin knocked Alexander down with a .45 caliber automatic pistol but, in answer to appellant's inquiry, he denied killing him. Appellant said that he left Martin and Alexander in the store and went to the car. In the statement appellant identified a .45 caliber automatic pistol and a .32 caliber revolver recovered by the police in Cincinnati as the same ones allegedly stolen from their car. The .32 caliber revolver was further identified as "the one that came out of the Meadowthorpe Liquor Store when Buddy (Martin) and I held it up on Wednesday, March 16, 1960." On the trial further objection to the introduction of this part of the statement was made.

Before the statement was permitted to be introduced at the trial, the trial judge heard evidence as to its competency and admissibility in accordance with KRS 422.110(2). Appellant urges that the statement was obtained by coercion. He testified that he was drunk when arrested; that he was knocked down, threatened, and treated roughly; that he suffered from lack of sleep; that he was held incommunicado; and that he was questioned repeatedly.

A psychologist testified that he had examined appellant and had found his general intellectual level to be dull, with an I.Q. of between 79 and 83. On the test given a score of 90 to 110 was considered normal. The test was given on February 15, 1954, while appellant was confined at Kentucky Village, a reformatory for delinquent youths. Appellant completed the eighth grade in 1957 while in confinement at the LaGrange reformatory.

The three police officers involved denied any mistreatment of appellant and stated that he talked freely concerning the affair when arrested and later in Lexington. On the subject of being held incommunicado, appellant admitted that he was permitted to

write to his girl friend. He told her to tell his mother to come to see him on Friday. There is no record of any request for counsel. Before appellant made his statement he was granted permission to talk with Lewis, the parole officer. The statement signed by appellant contains recitations evidencing its voluntariness. On this and other similar evidence heard, the trial judge held that the statement was voluntarily given.

The evidence heard in chambers by the trial judge supports his finding of fact that the statement was voluntarily given. There is support for this finding in the appellant's testimony given on direct examination at the trial. He testified that when he was questioned in Cincinnati he did not tell the police officers anything about what had occurred. In response to questions by his counsel appellant answered as follows:

"Q. 118. Did you sign this statement that has been read in evidence here?

"A. Yes, sir.

"Q. 119. So far as you know, Willie, does this statement contain the true story?

"A. Yes, sir."

On direct examination appellant repeated substantially the facts previously given in the statement now attacked. Both on direct examination and in the statement appellant said he went into the store first, Martin came in later with a .45 automatic pistol, and he, appellant, left the store before any shot was fired. In both instances appellant denied having a weapon. The purport of his denial is to blame Martin with the killing. The fact that Alexander was killed by a .32 caliber bullet destroys the effect of such denials. Appellant's testimony given on direct examination lends strength to the trial judge's finding on the issue of voluntarily giving the statement.

■ The rule is that where, as here, the decision of the trial judge as to admissibility of the statement rests on an issue of fact, it will not be disturbed unless it satisfactorily appears that the evidence supporting the decision was insufficient. Tarrence v. Commonwealth, Ky., 265 S.W.2d 52, certiorari denied 348 U.S. 899, 75 S.Ct. 220, 99 L.Ed. 706; Karl v. Commonwealth, Ky., 288 S.W. 2d 628; Sheckles v. Commonwealth, Ky., 289 S.W.2d 515, certiorari denied 352 U.S. 881, 77 S.Ct. 105, 1 L.Ed.2d 82. The evidence supports the decision.

It is argued that the testimony of Gilbert Cravens, a detective with the Lexington Police Department, concerning the identification of the .45 automatic pistol was inadmissible as being hearsay evidence. Cravens testified that at the Cincinnati Police Headquarters Martin, in the presence of appellant, pointed out the .45 automatic pistol as being his weapon and that appellant then pointed out the .32 revolver as being his gun.

■ It is contended that such testimony fails the test as the basis for admitting evidence as an admission by silence. In Merriweather v. Commonwealth, 118 Ky. 870, 82 S.W. 592, 26 Ky.Law Rep. 793, these requisites were stated to be: "(1) Did the person to be bound by the statement hear it? (2) Did he understand it? (3) Did he have an opportunity to express himself concerning it? (4) Was he called upon to act upon or reply to it?" The implication of admission by silence rests upon the idea of acquiescence and does not apply unless an acquiescence in what is said can be presumed. Griffith v. Commonwealth, 250 Ky. 506, 63 S.W.2d 594. See also Lett v. Commonwealth, 284 Ky. 267, 144 S.W.2d 505.

■ The identification of the two weapons occurred in the presence of Cravens, Martin, and appellant, according to Cravens' testimony. It is reasonably obvious that the answer to each of the test questions must be in the affirmative. Appellant heard and understood the similar request when he pointed out his weapon. There was accorded him the opportunity and the obligation to deny, if untrue, the identification made by Martin, but instead, he acted upon a similar request and identified his own gun.

Not only did appellant fail to deny Martin's ownership of the .45 automatic pistol on that occasion, but neither did he deny it when he testified on the trial. Cravens' testimony on the identification of Martin's pistol was correctly admitted.

■ It is further urged that the admission of the .45 automatic pistol in evidence was error because the integrity of the weapon had not been established. The .45 automatic pistol was introduced in evidence after Cravens had testified concerning its identification by Martin in the presence of appellant. On direct examination Cravens further identified the weapon as being the one identified by Martin in Cincinnati. He also said that Martin had told him "where he bought it and also had a receipt for it." Cravens said that he had retained possession of the weapon until it was turned over to Captain Henry of the Identification Bureau. On cross-examination Cravens stated that he could identify the weapon by its serial number and was positive in his identification of the gun.

There was no issue concerning the condition, or change of condition, of the gun. Appellant testified that Martin had used a ".45," and on cross-examination he would not deny that the one introduced in evidence belonged to Martin. Where the identity was the sole issue, Cravens' testimony was sufficient on which to permit the introduction of the weapon, without further proof of its integrity.

■ One of the owners and a clerk of the liquor store robbed two days earlier were permitted to identify the .32 revolver as being the one taken in that robbery, in which appellant participated. Appellant complains that such evidence is violative of the rule prohibiting evidence of the commission of other crimes by the accused. Of equal application to the rule insisted on by appellant is the rule that all evidence which is pertinent to the issue and tends to prove the crime charged against the accused is admissible, although it may also prove or tend to prove the commission of other crimes by him or to establish collateral facts. The fact that it may tend to prejudice the accused in the minds of the jurors is not grounds for its exclusion. The evidence complained of was competent because it tended to establish accused's possession of the fatal weapon and showed a plan or purpose of using it to obtain money by force. Quarles v. Commonwealth, Ky., 245 S.W.2d 947; Ringstaff v. Commonwealth, Ky., 275 S.W. 2d 946; Shepperd v. Commonwealth, Ky., 322 S.W.2d 115; and Martin v. Commonwealth, Ky., 361 S.W.2d 654 (1962).

■ The trial lasted two days. The jury was kept together overnight. Members of the jury were permitted to make telephone calls concerning their needs relative to the overnight stay. The calls were made in the presence of a deputy sheriff who heard the juror's conversation but did not hear what was said from the other end of the line. Another deputy remained with the other jurors while the individual calls were being made. The telephones used were on the same floor as the courtroom.

Appellant contends that such conduct constituted a failure to keep the jurors together in violation of Section 244 of the Criminal Code. The question was raised for the first time in the motion for a new trial. It is urged that the objection was waived and came too late.

■ Ordinarily this would be true. Vaughn v. Commonwealth, Ky., 255 S.W.2d 613. However, in death sentence cases the rule is otherwise. In such cases the Court will consider any error in the record claimed to be prejudicial, whether timely objected to or not, and will direct a reversal of the judgment in order that the accused may be accorded a fair and impartial trial. Bowman v. Commonwealth, Ky., 290 S.W.2d 814.

■ A hearing was held to determine the question of improper separation. The jurors and deputy sheriffs testified as has

been detailed. Their testimony was to the effect that the case had not been discussed in the telephone calls. No testimony was offered by the appellant. None of the persons to whom the jurors talked was called to testify.

Permitting a juror to hold a conversation over the telephone when the officer cannot hear what is said to the juror has been condemned. Canter v. Commonwealth, 176 Ky. 360, 195 S.W. 825. In Wells v. Commonwealth, 313 Ky. 371, 231 S.W.2d 30, failure of the sheriff to hear any of the conversation was held to be an improper separation and reversible error. The Wells case is distinguishable from the present case, wherein the officers testified that the jurors were permitted to make the calls, that they heard what the jurors said, and that the jurors did not talk about the case. In Hamilton v. Commonwealth, Ky., 285 S.W.2d 156, it was held that an opportunity to exercise improper influence had been presented when four of six women jurors were left unguarded as long as fifteen minutes, and still another opportunity existed when one telephone call was made in the absence of a guard. A reversal was required. The Court gratuitously said: "The better practice is to have the jurors accompanied even when necessary phone calls are made." In Glenday v. Commonwealth, 255 Ky. 313, 74 S.W.2d 332, a juror's telephone call made in the presence of the officer was approved.

In cases involving improper separation and telephone calls made by jurors, the saving feature seems to be the protection afforded by the presence of the officer who hears the juror's conversation and can testify that the juror had made no mention of the case. This is a narrow distinction. Such conduct has been criticized. It is open to abuse. On the other hand, it has been recognized as a proper practice.

It is recognized that much reliance must be placed on the jurors and that acts of necessity, comfort, and personal convenience are essential to their well-being while they are performing their duties as jurors. Horton v. Commonwealth, Ky., 240 S.W.2d 612; Roark v. Commonwealth, Ky., 321 S.W.2d 783. Generally it is incumbent on the Commonwealth to show clearly that no opportunity was afforded for exercise of improper influence on the juror who has been separated from the remaining members of the panel. Campbell v. Commonwealth, 162 Ky. 106, 172 S.W. 110; Gay v. Commonwealth, 303 Ky. 572, 198 S.W.2d 308.

The granting or refusing of a new trial for violation of Criminal Code Section 244, or on other grounds, rests largely in the discretion of the trial judge, and his decision will not be disturbed unless it clearly appears to be in error. Colwell v. Commonwealth, Ky., 320 S.W.2d 116. Under the facts of this case the trial judge decided that the separation was not improper. The Court does not feel that he was in error.

Judgment affirmed.